**SIGN AD, INC., Appellant,**

v.

**TRIPLE O INVESTMENTS, L.P., Appellee.**

No. 09–99–227 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 30, 2000.

Decided Sept. 28, 2000.

Sydney Nell Floyd, Richard Rothfelder, William Leigh, Rothfelder & Falick, L.L.P., Houston, for appellant.

Paul W. Gertz, Kelli B. Smith, Germer & Gertz, L.L.P., Beaumont, Gerald J. Creighton, Jr., G. Mark Creighton, Darden, Fowler & Creighton, L.L.P., Conroe, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

This appeal concerns the construction of a contract. The lease contract executed by the advertising sign company, Sign Ad, Inc., and the real property owner, Sigmor Corporation, gave the lessee the right to erect and maintain an advertising billboard on the property, and gave the lessor the right to terminate the lease if it sold the property. Sigmor sold the property to Triple O Investments, L.P. Sign Ad agents attempted to remove the sign, but were prevented from doing so by Rigby Owen, Jr., acting on behalf of the limited partnership. Triple O filed a suit for injunction, which it later amended to include a petition for declaratory judgment of ownership of the sign. Sign Ad asserted affirmative defenses of estoppel and quasi-estoppel, and counterclaimed for conversion and declaratory judgment of the status of the lease and its right to remove the billboard. The trial court entered judgment declaring Triple O's ownership of the billboard and permanently enjoining Sign Ad from removing the sign.

The Lease provided, with emphasis added by us:

13. If Lessee violates or is in default of any provision of this Lease, then Lessor may, at any time thereafter, terminate this Lease by giving Lessee written notice of termination. Any termination shall be without prejudice to any other rights or remedies of Lessor. No covenant contained in this Lease, nor remedy provided for breach, shall be waived or lost by prior indulgence of Lessor in any breach by Lessee. *Lessor reserves the right to terminate this Lease upon thirty (30) days' prior notice if Lessor sells the property and the purchaser does not desire to continue this Lease in effect,* or Lessor determines in its sole judgment the sign will hinder Lessor's further development of its property. *In the event of termination by reason of a sale of Lessor's property, Lessee shall remove its sign and restore the Premises as provided in Paragraph 14 below prior to the date of termination.*

14. Upon any termination of this Lease, *Lessee shall* within forty-five (45) days after such termination, or *on or before the date of termination if the termination is by reason of the sale of the premises under Paragraph 13 above, remove the sign and appurtenant equipment,* and restore the Premises as nearly as practicable to its original condition. *In the event the sign and equipment are not timely removed, then said sign and equipment shall become the property of Lessor free and clear of any liens and encumbrances,* or Lessor, at its option, may have the sign and equipment removed and the Premises restored, all at the expense of Lessee. Such amount shall be payable to Lessor upon receipt of an invoice from Lessor at its address set out below.

Events transpired in the following order:

April 23 "Contract of Sale" between Sigmor and Rigby Owen, Jr., as Trustee. Contract provided for closing within 80 days.

June 4 Sigmor notifies Sign Ad of "Contract of Sale" and intent to terminate lease.

June 22 Sigmor and Owen extend closing date to July 22, 1998.

July 15 Sign Ad notifies Sigmor that it is negotiating new lease with buyer.

July 24 Sigmor to Triple O transaction closes.

August 18 Sign Ad workers performing maintenance are trespass warned by Owen.

September 4 Sigmor refunds rent prorated to July 24, 1998.

September 24 Sign Ad notifies Owen it will remove sign on October 2.

October 2 Sign Ad attempts to remove billboard.

The first of Sign Ad's three issues states:

Issue 1: The trial court should not have rendered judgment declaring Triple O to be the owner of the billboard sign structure.

A. The Lease gave the Lessor the right to terminate the Lease if it "Sells the property and the purchaser does not desire to continue" the Lease. The trial court's construction of this provision as allowing termination based on an executory contract to sell the property was incorrect as a matter of law.

B. Solely in the alternative, the provision is susceptible to two reasonable alternatives, making the interpretation of the Lease a question of fact. There is no evidence or insufficient evidence that the parties intended anything less than a sale that transferred title and possession as the predicate for terminating the Lease.

■ In construing a written contract, our primary concern is to ascertain the true intention of the parties as expressed in the instrument, giving effect to all of the provisions. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Ambiguity is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.* at 394. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.* A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.*

■ First, Sign Ad argues the trial court's construction of the contract as allowing termination based on an executory contract to sell the property was incorrect as a matter of law. Sign Ad contends the lease must be construed to require an actual sale, that is, the transfer of title and possession, as a condition precedent to termination of the lease, because any other interpretation would permit termination based upon a subjective and unverifiable event. Its argument implies that Sign Ad would not have entered into a lease that required the expenditure of a significant sum of money if the lease could be terminated without a condition of a completed sale. The remainder of the pertinent sentence in the contract belies its argument, for the lease could be terminated if "Lessor determines in its sole judgment the sign will hinder Lessor's further development of its property." This clause is both totally subjective and completely unverifiable, as it required no actual development in order to trigger termination.

■ Sign Ad argues Sigmor's and Owen's actions acknowledged that the lease did not terminate on July 6, 1998. The June 4, 1998, letter, which Triple O contends triggered the 30–day notice period for termination of the lease and removal or forfeiture of the billboard, provides, in pertinent part:

Sigmor Corporation has entered into a Contract of Sale dated April 28, 1998 to sell the above referenced property.

Per Paragraph 13 and 14 of the Advertising Sign Lease between Sigmor Corporation and Sign Ad, Inc., please be advised we are hereby giving you written notice of our intent to terminate the lease.

In the event you wish to negotiate a new lease with the Buyer, you may contact the Buyer's broker. . . .

Sign Ad claims the inclusion of the word "intent" referred to future action rather than fact. We disagree. The word "intent" may connote either a contemplation of future action or a present state of mind.

The only plausible reading of the letter is that the letter be immediately effective to provide notice of termination of the lease.

Sign Ad's president and general manager, Wes Gilbreath, testified that after receiving the June 4 letter, he instructed Mark Taylor to "make the contact and see if there was anything to the letter, if there was actually a sale imminent or if it was something worth pursuing beyond that phone call." Sometime between June 10 and June 21, 1998, Sign Ad's representative, Mark Taylor, telephoned Owen and asked him why he wanted to terminate the lease. Owen said he didn't like the contract. Asked what part he did not like, Owen replied that there weren't any parts he really liked. Taylor asked if he could get back with Owen later. Owen had no further personal contact with Sign Ad before the July 24 closing.[1] Taylor turned the matter over to Terry Denman for renegotiation. Denman did not testify and there is no evidence on the record regarding his actions or knowledge.

On June 22, 1998, an addendum to the Contract of Sale extended the closing date to July 22 and provided that all other contract terms would remain in full force and effect. According to Sign Ad, the April 23 contract required that the buyer accept assignment of the lease. Again, the language contained in the documents demonstrates the buyer's desire to terminate the lease. The contract of sale stated that at closing, "Seller shall deliver to Buyer: . . . (ii) the executed original of the assignment of the Advertising Sign Ground Lease; using the form attached hereto as EXHIBIT 'D'." Exhibit "D", the assignment of the lease, states, "Assignee hereby accepts the assignment of the Lease and agrees to comply with the terms and provisions thereof, pursuant to addendum." The "addendum" states:

> In regard to the assignment of lease by and between Sigmor Corporation lessor and Sign Ad, Inc. Outdoor Advertis-

ing as lessee, the purchaser Rigby Owen, Jr. hereby gives notice to Sign Ad, Inc. Outdoor Advertising pursuant to Paragraph 13, Exhibit "A" that purchaser wishes to terminate said lease within thirty days, unless Sign Ad, Inc. wishes to renegotiate the terms of said lease prior to the thirty day termination period.

Triple O concedes the addendum was never signed by Sigmor, and never became a part of the lease, but as evidence of the buyer's intent it certainly does not support an inference that Triple O contemplated continuing the lease after it purchased the property. Owen testified that Sigmor "had no question in their mind" that he wanted the lease terminated.

Sign Ad also claims Sigmor must not have believed the lease terminated effective July 6, because a July 15 letter did not state that the sign should have already been removed. The letter states:

> On June 4, 1998, our company sent you a letter, via certified mail, regarding the sign termination of the above property. I have not received the certified card receipt from the post office as of yet. I have enclosed this letter herein as notice to said termination, should you not have received the certified mail copy.

The facsimile transmittal sheet states: "MESSAGE: # 296 Sign Termination— 2nd Notice." The letter seeks to document the previously disseminated notice of termination. The letter elicited the following response from Sign Ad on July 15, 1998:

> In response to your facsimile on July 15, 1998, we did receive the original correspondence letter Dated June 4, 1998 informing us of lease termination on the above referenced property. However, after contacts with the purchaser of the site, it is his desire to keep the structure on the subject property.

---

1. The record is silent regarding whether Sign Ad was informed of the actual closing date before July 24. The closing was extended beyond the date in the Contract of Sale.

We are currently in progress with negotiating a new lease with the new owner.

It is our intention, therefore, to keep the structure onsite which would appear to comply with the terms of the lease in Paragraph 13 with regards to purchaser desire. Please contact us if we can be of further assistance in this matter.

After having been notified by the lessor that the termination provision of the contract had been triggered, Sign Ad informed the lessor that it was negotiating a new lease. This is some evidence that Sigmor's intent that the lease terminate was communicated to Sign Ad.

Finally, Sign Ad argues Sigmor acknowledged the validity of the lease beyond July 6, by refunding rent prorated from the date of closing. That letter stated:

Your Sign Lease terminated on July 24, 1998 when we sold the subject property. In reviewing your Customer History Listing, (see attached) it appears that your check # 49799 was applied to rent for the 1998 year in the amount of $4,200.00. Reimbursement calculations are listed below.

(1) $4,200.00 annual rent paid ÷ 365 days = $11.51 per day.

(2) $11.51 per day × 205 days (January 1, 1998 to July 24,1998) = $2,359.55.

| Total payment | $4,200.00 |
| Less | ($2,359.55) |
| Total due to you | $1,840.45 |

Attached is our check # 009137 dated September 3, 1998, in the amount of $1,840.45 which represents reimbursement of rent paid from July 25, 1998 through December 31, 1998.

The lease required a minimum 30 days notice of contract termination. In the event of termination due to a sale of the property, the lease required Sign Ad to remove its sign before the termination date, not within 45 days after the termination date. Assuming Sign Ad is correct, and Sigmor did not intend to terminate the lease until the closing date, Sign Ad was still obligated under the contract to remove its billboard by July 24, 1998. Sign Ad made no attempt to remove its sign until October 2, although by August 18 Sign Ad had actual knowledge that the Sigmor to Triple O transaction had already closed.

Sign Ad argues the contract is not ambiguous, and required that actual transfer of title and possession to the property occur before notice of termination could be effective. We agree with the first statement but not the last. The lease contemplated three conditions: 1) that a sale occur, that is, transfer of ownership and possession; 2) that the lessor provide notice of termination at least 30 days before termination; and 3) that the lessee remove the sign before the date of termination. There is simply no language in the contract which can be construed to make Condition 1 a prerequisite to Condition 2. If Conditions 1 and 2 occurred, the forfeiture clause became operational unless Condition 3 also occurred. Condition 2 occurred on June 4, 1998. Condition 1 occurred on July 24, 1998. No attempt to perform Condition 3 occurred until after the first two conditions occurred. Therefore, Sign Ad forfeited its rights to the billboard according to the plain terms of the contract. Issue one is overruled.

Issue two urges, "The evidence does not support the trial court's findings of fact about termination of the lease and forfeiture of the sign. In addition, many of the findings are immaterial." The trial court's findings of fact include the following findings:

4. On or about April 23, 1998, Plaintiff entered a Contract of Sale with Sigmor Corporation by the terms of which Plaintiff agreed to purchase the land upon certain conditions and after entering the Contract, requested that Sigmor Corporation exercise its right to terminate the Lease with Defendant.

5. On June 4, 1998, Sigmor Corporation, Lessor, gave Notice of Termination

of the Lease to defendant, Sign Ad, Inc., Lessee. Plaintiff's Exhibit 9.

6. The Notice dated June 4, 1998, was promptly received by Defendant, Sign Ad, Inc.

7. On July 15, 1998, a second Notice of Termination was given and the receipt of same was acknowledged in writing by Defendant and in addition, Defendant acknowledged receipt of the Notice of Termination dated June 4, 1998. Plaintiff's Exhibit 10.

8. Plaintiff acquired title to the property on which the sign was located, as well as all of Sigmor Corporation's rights, title and interest in the sign and all of Lessor's residual rights under the Lease, from Sigmor Corporation by Deed, a copy of which is attached as Exhibit "B" to Plaintiff's Second Amended Original Petition and which is Plaintiff's Exhibit 12.

9. Defendant received all notices and demands required under the terms of the Lease Agreement.

10. Defendant totally ignored those demands.

11. Defendant did not give a prior written notice to Plaintiff of its intent to remove the sign during any of the time periods stated in the Lease Agreement.

12. Defendant did not attempt to remove the sign nor express its intent to remove the sign within 30 days of the giving of either of the Notices of Termination.

13. Defendant did not attempt to remove the sign nor express its intent to remove the sign within 30 days of the receipt of either of the Notices of Termination.

14. Defendant, on October 2, 1998, entered upon the property without the consent of the owner and undertook removal of the sign and was on that date stopped and prohibited by Plaintiff, the owner of the land.

15. On October 2, 1998, all of Defendant's rights to the sign had been forfeited.

Sign Ad argues finding of fact No. 4 is insupportable because Owen never unequivocally communicated his desire to terminate the Lease prior to June 4, 1998. Owen testified that Sigmor "had no question in their mind" that he wanted the lease terminated. His testimony is corroborated by the text of the June 4 letter. Finding of fact No. 4 is supported by the evidence.

Sign Ad contends the June 4 and July 15 letters were not effective as "notices of termination" because they predated the transfer of title to the property and because Owen did not unequivocally request Sigmor to terminate the lease prior to June 4. As we have already discussed, the record supports a finding that Owen communicated his desire to Sigmor before June 4, and actual transfer of ownership was not a contractual prerequisite to providing notice of termination.

Sign Ad argues finding of fact No. 10 is not supported by the evidence. The June 4 and July 15 letters are more appropriately called "notices" rather than "demands." We also agree the notices were not "totally ignored"; Sign Ad replied with correspondence that stated it was negotiating a new lease. Since promissory estoppel is not an issue in the case, Sign Ad did not respond in a manner that avoided forfeiture of the sign.

Sign Ad contends the 30–day notice period was not triggered until it received Sigmor's September 4 refund letter, so that its October 2 attempt to remove the sign occurred prior to forfeiture. The contract required Sign Ad to remove its sign before the date of termination, not 30 days after the date unearned rentals were returned.

The arguments under the second issue rely on the premise that the June 4 notice of termination was ineffective because the actual transfer had not yet occurred.

Having rejected that premise, we overrule issue two.

Issue three urges, "The trial court abused its discretion in permanently enjoining Sign Ad from removing the sign." The appellant's argument presupposes a holding that it did not forfeit its rights to the sign by failing to remove it before the date title to the real property was transferred to Triple O. Having rejected that premise, we overrule issue three. The judgment is affirmed.

AFFIRMED.