**COMMERCIAL BANK OF TEXAS,
N.A., Appellant,**

v.

**Walter A. LUCE, Jr., Appellee.**

No. 09–01–378 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Aug. 7, 2002.

Decided Dec. 5, 2002.

Robert T. Cain, Jr., Zeleskey, Cornelius, Hallmark, Roper & Hicks, L.L.P., Lufkin, for appellant.

Clayton E. Dark, Jr., Lufkin, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Commercial Bank of Texas, N.A. ("Commercial") appeals a judgment awarding damages and attorney's fees to Walter A. Luce, Jr. ("Luce") for Commercial's breach of an employment contract. Because of error in the submission of the case to the jury, we reverse and remand the case for a new trial.

### THE EMPLOYMENT CONTRACT CLAIM

Luce was employed as executive vice president and chief financial officer of the Bank of East Texas, S.S.B. ("BOET") under a two year employment contract extending from 1996 to 1998. The contract required BOET's board of directors to review the contract at the "fiscal year-end 1997," and to determine whether to renew the contract for an additional one year term at the conclusion of the two year term. The BOET board met on December 16, 1997, to decide whether to extend the contract for an additional year, until December 1999. However, before the 1997 board meeting BOET agreed to merge with Commercial with the merger becoming effective on January 31, 1998. At the December 1997 board meeting, the BOET directors nevertheless approved Luce's one year extension, subject to Commercial's consent. This action was memorialized the same day by an extension agreement signed by Luce and the board members. On the signature page, the chairman of the BOET board wrote on the extension agreement: "Agreed to 1 year subject to approval of C.N.B." [1]

Tommy Ellison, Commercial's president, was at the 1997 BOET board meeting. At trial he testified he then orally advised the BOET board that Commercial would not approve the extension. After the board meeting, Danny Payne, BOET's president, wrote Commercial's president and formally notified him of the extension of Luce's employment contract. The letter cited the BOET board's decision, certain terms of the merger agreement, and applicable terms of the Luce employment agreement. The letter concluded by requesting Commercial's "written position regarding the Extension of the Employment agreement of Walter A. Luce, Jr. as approved by the Board of Directors on December 16, 1997."

Commercial did not respond to the letter. Ellison, Commercial's president, testified at trial that he was on vacation for several days around that time and did not recall seeing the letter until after this suit

1. "C.N.B." apparently referred to Commercial.

was filed; he further indicated that BOET did not send the letter to the right address or to Commercial's legal counsel. Luce's employment was terminated in December 1998 at the end of the original term of his two year contract. Claiming he was entitled, pursuant to the extension agreement, to remain employed by Commercial for one additional year, until December 1999, Luce sued Commercial for breach of his employment contract. The jury ruled in his favor.

ISSUES ONE AND TWO: THE MERGER
AND EXTENSION AGREEMENTS

 In its first issue Commercial contends the merger agreement required that Commercial's approval of the extension of Luce's contract be obtained in order for the extension to be effective. Commercial then argues that even if the merger agreement did not contain such a requirement, the extension agreement did. In either case, Commercial says it never gave its approval. In its second issue, Commercial maintains that it expressly disapproved the extension of Luce's contract, and, as a result, the extension agreement never became effective.

The merger agreement is a fifty-four page document with considerable additional exhibits and schedules attached. Of particular concern in this case is paragraph 4.02, which provides, in part, as follows:

4.02 *Forbearances of BOET.* Except as set forth on *Schedule 4.02,* during the period from the date of this Reorganization Agreement to the Closing Date, BOET shall not, without prior written consent of the NCB entities [Commercial]:

. . . .

(b) enter into or amend any employment, severance or similar agreement or arrangement with any director or officer or employee, or materially modify any of the BOET Employee Plans or grant any salary or wage increase or materially increase any employee benefit (including incentive or bonus payments), except (i) normal individual increases in compensation to employees consistent with past practice, (ii) as required by law or contract and (iii) such increase of which BOET notifies the NCB Entities [Commercial] in writing and which the NCB Entities do not disapprove within 10 days of the receipt of such notice[.]

This section concerns BOET's obligations to obtain Commercial's consent after the execution of the merger agreement until the closing. The merger agreement provides elsewhere that, as successor to BOET, Commercial would be required to honor BOET's obligations authorized by the merger agreement.

 In construing the merger agreement, the primary concern is to ascertain the true intent of the parties as expressed in the instrument. *See Sign Ad, Inc. v. Triple O Invs., L.P.,* 26 S.W.3d 761, 763 (Tex.App.-Beaumont 2000, no pet.). The parties to the contract are presumed to have intended every clause to have effect. *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983). Attachments to a contract specifically referred to in the contract are considered part of the contract. *See Milam Dev. Corp. v. 7*7*0*1* Wurzbach Tower Council of Co–Owners, Inc.,* 789 S.W.2d 942, 945 (Tex.App.-San Antonio 1990, writ denied). Paragraph 4.02 begins by excepting Schedule 4.02 from its requirements. Schedule 4.02, an attachment to the merger agreement, refers to the employment contract of Walter Luce, which is set forth in full under Schedule 2.08(b)(iii). The inclusion of the initial "Except as set forth on Schedule 4.02" clause and the attached Schedule 4.02 manifests the intent of the parties

that the extension of the Luce employment agreement not be subject to the prior written consent of Commercial. We conclude Commercial's prior written consent was not required under the terms of the merger agreement.

Commercial also directs us to the December 1997 BOET board meeting where the decision to extend the Luce contract was expressly made subject to Commercial's approval. No provision in the employment contract or in the extension agreement precluded BOET from conditioning its approval of the employment contract extension on Commercial's approval. The condition was added before Luce signed the contract extension. As we interpret this contract, the parties then agreed that the employment extension would be effective if approved by Commercial.

If the oral expression of an intent to reject by Commercial's president at the BOET board meeting was the only decision required, the extension approved at the meeting would have no meaning from its inception. The letter by BOET's president asked for Commercial's "written position" on the employment extension. This evidence indicates that Commercial's expression of an intent to reject at the BOET board meeting was not the final decision required by the contract.

The core dispute in this case appears to be whether Commercial's overall conduct constituted approval of the extension of the Luce employment contract. The president of BOET testified he understood the lack of a response by Commercial to his letter to be an approval of the contract extension. BOET was required by the merger agreement to try to retain key employees. Luce's employment contract assumed by Commercial required a decision on the extension. The record contains some evidence a reply to the BOET letter by Commercial was reasonably expected by the parties.

▆ As a general rule of law, inaction is not construed as assent or approval. *See Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County,* 52 S.W.3d 128, 132 (Tex.2000); *See* 2 Samuel Williston & Richard A. Lord, A TREATISE ON THE LAW OF CONTRACTS § 6:49 (4th ed.1991). But a narrow exception may apply where the parties' relationship or the surrounding circumstances justify the expectation of a reply; under proper circumstances the parties may be justified in assuming inaction or silence indicates approval. *See generally id.* at §§ 6:49–54. Whether Commercial's overall conduct communicated approval—under circumstances sufficient to satisfy an exception to the general rule—involves disputed facts dependent in part on the credibility of witnesses. Issues one and two are overruled.

ISSUE THREE: THE GENERAL CHARGE

▆ Commercial asserts in issue three that the trial court erred in submitting the case to the jury on a general charge without any explanatory instructions. Over the objections of both parties, and after rejecting proposed jury questions submitted by both parties, the trial court asked the jury the following question: "On Walter Luce, Jr.'s claim against Commercial Bank of Texas for breach of contract do you find in favor of Walter Luce, Jr., or Commercial Bank of Texas." The jury answered: "Walter Luce, Jr. Yes, we the 10 undersigned vote in favor of Walter Luce, Junior." Having properly objected in the trial court on the grounds now urged on appeal, Commercial preserved the charge error. *See North Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 122 (Tex.App.-Beaumont 2001, pet. denied).

Until 1988, the opening paragraph of Rule 277 of the Texas Rules of Civil Procedure read as follows:

Special Issues. In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case, except that, *for good cause subject to review or on agreement of the parties, the court may submit the same on a general charge.* (emphasis added).

However, the current version of Rule 277, as amended in 1988, does not expressly authorize a general charge under any circumstance, but instead requires the trial court, "whenever feasible" to submit the cause on broad-form questions.[2] As part of this submission, "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277.

A trial court has considerable discretion in submitting broad-form jury questions. *See Interstate Northborough Partnership v. State,* 66 S.W.3d 213, 224–25 (Tex.2001). But the questions must properly submit the controlling fact issues for the jury's determination. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995)("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."). The parties have the right to be judged by a jury properly instructed in the law. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d

378, 388 (Tex.2000). The jury question here asked the jury to rule "in favor of" Luce or Commercial—without explanatory instruction. The charge did not submit controlling fact issues and did not instruct the jurors on the law. Issue three is sustained.

The case is reversed and remanded for a new trial. Because of our disposition of issue three we need not consider issue four, which asks for a new trial based on the excessiveness of the damages.

REVERSED AND REMANDED.

---

**2.** Rule 290 of the Texas Rules of Civil Procedure was not amended when Rule 277 was changed, and still defines a jury verdict as "either a general or special verdict." *See* TEX.R.CIV.P. 290. Rule 290 further provides that "a general verdict is one whereby the jury pronounces generally in favor of one or more parties to the suit upon all or any of the issues submitted to it." We do not interpret Rule 290 as authorizing the charge submitted here.