In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-378 CV


____________________



COMMERCIAL BANK OF TEXAS, N.A., Appellant



V.



WALTER A. LUCE, JR., Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. 32,029-99-5





 

OPINION


 Commercial Bank of Texas, N.A. ("Commercial") appeals a judgment awarding
damages and attorney's fees to Walter A. Luce, Jr. ("Luce") for Commercial's breach of
an employment contract. Because of error in the submission of the case to the jury, we
reverse and remand the case for a new trial. 



The Employment Contract Claim


 Luce was employed as executive vice president and chief financial officer of the
Bank of East Texas, S.S.B. ("BOET") under a two year employment contract extending
from 1996 to 1998. The contract required BOET's board of directors to review the
contract at the "fiscal year-end 1997," and to determine whether to renew the contract for
an additional one year term at the conclusion of the two year term. The BOET board met
on December 16, 1997, to decide whether to extend the contract for an additional year,
until December 1999. However, before the 1997 board meeting BOET agreed to merge
with Commercial with the merger becoming effective on January 31, 1998. At the
December 1997 board meeting, the BOET directors nevertheless approved Luce's one year
extension, subject to Commercial's consent. This action was memorialized the same day
by an extension agreement signed by Luce and the board members. On the signature page,
the chairman of the BOET board wrote on the extension agreement: "Agreed to 1 year
subject to approval of C.N.B." (1)

 Tommy Ellison, Commercial's president, was at the 1997 BOET board meeting. 
At trial he testified he then orally advised the BOET board that Commercial would not
approve the extension. After the board meeting, Danny Payne, BOET's president, wrote
Commercial's president and formally notified him of the extension of Luce's employment
contract. The letter cited the BOET board's decision, certain terms of the merger
agreement, and applicable terms of the Luce employment agreement. The letter concluded
by requesting Commercial's "written position regarding the Extension of the Employment
agreement of Walter A. Luce, Jr. as approved by the Board of Directors on December 16,
1997." 

 Commercial did not respond to the letter. Ellison, Commercial's president, testified
at trial that he was on vacation for several days around that time and did not recall seeing
the letter until after this suit was filed; he further indicated that BOET did not send the
letter to the right address or to Commercial's legal counsel. Luce's employment was
terminated in December 1998 at the end of the original term of his two year contract. 
Claiming he was entitled, pursuant to the extension agreement, to remain employed by
Commercial for one additional year, until December 1999, Luce sued Commercial for
breach of his employment contract. The jury ruled in his favor. 

Issues One and Two: 


The Merger and Extension Agreements



 In its first issue Commercial contends the merger agreement required that
Commercial's approval of the extension of Luce's contract be obtained in order for the
extension to be effective. Commercial then argues that even if the merger agreement did
not contain such a requirement, the extension agreement did. In either case, Commercial
says it never gave its approval. In its second issue, Commercial maintains that it expressly
disapproved the extension of Luce's contract, and, as a result, the extension agreement
never became effective. 

 The merger agreement is a fifty-four page document with considerable additional
exhibits and schedules attached. Of particular concern in this case is paragraph 4.02, which
provides, in part, as follows:

 4.02 Forbearances of BOET. Except as set forth on Schedule 4.02, during the
period from the date of this Reorganization Agreement to the Closing Date,
BOET shall not, without prior written consent of the NCB entities
[Commercial]:


 . . . .


 (b) enter into or amend any employment, severance or similar
agreement or arrangement with any director or officer or employee, or
materially modify any of the BOET Employee Plans or grant any salary or
wage increase or materially increase any employee benefit (including
incentive or bonus payments), except (i) normal individual increases in
compensation to employees consistent with past practice, (ii) as required by
law or contract and (iii) such increase of which BOET notifies the NCB
Entities [Commercial] in writing and which the NCB Entities do not
disapprove within 10 days of the receipt of such notice[.]


This section concerns BOET's obligations to obtain Commercial's consent after the
execution of the merger agreement until the closing. The merger agreement provides
elsewhere that, as successor to BOET, Commercial would be required to honor BOET's
obligations authorized by the merger agreement. 

 In construing the merger agreement, the primary concern is to ascertain the true intent
of the parties as expressed in the instrument. See Sign Ad, Inc. v. Triple O Invs., L.P., 26
S.W.3d 761, 763 (Tex. App.--Beaumont 2000, no pet.). The parties to the contract are
presumed to have intended every clause to have effect. See Ogden v. Dickinsen State Bank,
662 S.W.2d 330, 332 (Tex. 1983). Attachments to a contract specifically referred to in the
contract are considered part of the contract. See Milam Dev. Corp. v. 7*7*0*1* Wurzbach
Tower Council of Co-Owners, Inc., 789 S.W.2d 942, 945 (Tex. App.--San Antonio 1990,
writ denied). Paragraph 4.02 begins by excepting Schedule 4.02 from its requirements. 
Schedule 4.02, an attachment to the merger agreement, refers to the employment contract of
Walter Luce, which is set forth in full under Schedule 2.08 (b)(iii). The inclusion of the
initial "Except as set forth on Schedule 4.02" clause and the attached Schedule 4.02
manifests the intent of the parties that the extension of the Luce employment agreement not
be subject to the prior written consent of Commercial. We conclude Commercial's prior
written consent was not required under the terms of the merger agreement. 

 Commercial also directs us to the December 1977 BOET board meeting where the
decision to extend the Luce contract was expressly made subject to Commercial's
approval. No provision in the employment contract or in the extension agreement
precluded BOET from conditioning its approval of the employment contract extension on
Commercial's approval. The condition was added before Luce signed the contract
extension. As we interpret this contract, the parties then agreed that the employment
extension would be effective if approved by Commercial. 

 If the oral expression of an intent to reject by Commercial's president at the BOET
board meeting was the only decision required, the extension approved at the meeting would
have no meaning from its inception. The letter by BOET's president asked for
Commercial's "written position" on the employment extension. This evidence indicates
that Commercial's expression of an intent to reject at the BOET board meeting was not the
final decision required by the contract. 

 The core dispute in this case appears to be whether Commercial's overall conduct
constituted approval of the extension of the Luce employment contract. The president of
BOET testified he understood the lack of a response by Commercial to his letter to be an
approval of the contract extension. BOET was required by the merger agreement to try
to retain key employees. Luce's employment contract assumed by Commercial required
a decision on the extension. The record contains some evidence a reply to the BOET letter
by Commercial was reasonably expected by the parties. 

 As a general rule of law, inaction is not construed as assent or approval. See Texas
Ass'n of Counties County Government Risk Management Pool v. Matagorda County, 52
S.W.3d 128, 132 (Tex. 2000); See 2 Samuel Williston & Richard A. Lord, A Treatise
on the Law of Contracts § 6:49 (4th ed. 1991). But a narrow exception may apply
where the parties' relationship or the surrounding circumstances justify the expectation of
a reply; under proper circumstances the parties may be justified in assuming inaction or
silence indicates approval. See generally id. at §§ 6:49-54. Whether Commercial's
overall conduct communicated approval -- under circumstances sufficient to satisfy an
exception to the general rule -- involves disputed facts dependent in part on the credibility
of witnesses. Issues one and two are overruled. 

 Issue Three: The General Charge


 Commercial asserts in issue three that the trial court erred in submitting the case to
the jury on a general charge without any explanatory instructions. Over the objections of
both parties, and after rejecting proposed jury questions submitted by both parties, the trial
court asked the jury the following question: "On Walter Luce, Jr.'s claim against
Commercial Bank of Texas for breach of contract do you find in favor of Walter Luce, Jr.,
or Commercial Bank of Texas." The jury answered: "Walter Luce, Jr. Yes, we the 10
undersigned vote in favor of Walter Luce, Junior." Having properly objected in the trial
court on the grounds now urged on appeal, Commercial preserved the charge error. See
North Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 122 (Tex. App.--Beaumont 2001, pet.
denied). 

 Until 1988, the opening paragraph of Rule 277 of the Texas Rules of Civil
Procedure read as follows:

 Special Issues. In all jury cases the court may submit said cause upon
special issues without request of either party, and, upon request of either
party, shall submit the cause upon special issues controlling the disposition
of the case that are raised by the written pleadings and the evidence in the
case, except that, for good cause subject to review or on agreement of the
parties, the court may submit the same on a general charge. (emphasis
added).


However, the current version of Rule 277, as amended in 1988, does not expressly
authorize a general charge under any circumstance, but instead requires the trial court,
"whenever feasible" to submit the cause on broad-form questions. (2) As part of this
submission, "[t]he court shall submit such instructions and definitions as shall be proper
to enable the jury to render a verdict." Tex. R. Civ. P. 277. 

 A trial court has considerable discretion in submitting broad-form jury questions. See
Interstate Northborough Partnership v. State, 66 S.W.3d 213, 224-25 (Tex. 2001). But the
questions must properly submit the controlling fact issues for the jury's determination. See
Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995)("If an issue is
properly pleaded and is supported by some evidence, a litigant is entitled to have controlling
questions submitted to the jury."). The parties have the right to be judged by a jury properly
instructed in the law. See Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000). 
The jury question here asked the jury to rule "in favor of" Luce or Commercial -- without
explanatory instruction. The charge did not submit controlling fact issues and did not
instruct the jurors on the law. Issue three is sustained. 

 The case is reversed and remanded for a new trial. Because of our disposition of
issue three we need not consider issue four, which asks for a new trial based on the
excessiveness of the damages. 

 REVERSED AND REMANDED.

 _________________________________

 DAVID B. GAULTNEY

 Justice



Submitted on August 7, 2002

Opinion Delivered December 5, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. "C.N.B." apparently referred to Commercial. 
2. Rule 290 of the Texas Rules of Civil Procedure was not amended when Rule 277
was changed, and still defines a jury verdict as "either a general or special verdict." See
TEX.R.CIV.P. 290. Rule 290 further provides that "a general verdict is one whereby the
jury pronounces generally in favor of one or more parties to the suit upon all or any of the
issues submitted to it." We do not interpret Rule 290 as authorizing the charge submitted
here.