In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-172-CV


____________________



IN RE THE COMMITMENT OF DANIEL ALMAGUER






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 01-06-3836-CV






OPINION



 The State filed a petition seeking to involuntarily civilly commit appellant Daniel
Almaguer as a sexually violent predator. See Tex. Health & Safety Code Ann. §§
841.001-841.147 (Vernon 2003). Almaguer's prior sexually violent offenses were two
convictions for aggravated sexual assault of a child. Both offenses were committed on July
1, 1986, against two minor children younger than nine. Almaguer pleaded guilty to both
offenses and received a sentence in each case of twenty years, to run concurrently. There
was evidence in the record that Almaguer had sexually assaulted the children at least ten
times. The State's expert testified that Almaguer is a psychopath likely to reoffend,
suffers from pedophilia and an anti-social personality disorder, and has difficulty
controlling his urges. A jury found Almaguer suffers from a behavioral abnormality that
makes him likely to engage in predatory acts of sexual violence. He raises four issues on
appeal. 

 Almaguer first argues Chapter 841 is unconstitutional because it is punitive in
nature. He relies on the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144,
168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). We have considered and rejected similar
complaints before. See In re Commitment of Martinez, 98 S.W.3d 373 (Tex. App.--
Beaumont 2003, pet. filed); Beasley v. Mollett, 95 S.W.3d 590, 607-08 (Tex. App.--Beaumont 2002, pet. filed); In re Commitment of Mullens, 92 S.W.3d 881, 883-84 (Tex.
App.--Beaumont 2002, pet. filed). Issue one is overruled.

 In issue two, Almaguer contends his due process rights were violated when the trial
court refused his requested instruction to the jury on the issue of volitional control. The
trial court submitted to the jury the following question and definitions that track
subsections (2) and (5) of section 841.002 of the Act: 

 Do you find that Daniel Almaguer suffers from a behavioral abnormality that
makes him likely to engage in a predatory act of sexual violence?


 Behavioral Abnormality means a congenital or acquired condition that,
by affecting a person's emotional or volitional capacity, predisposes the
person to commit a sexually violent offense, to the extent that the person
becomes a menace to the health and safety of another person.


 Predatory Act means an act that is committed for the purpose of
victimization and that is directed toward:

 (A) a stranger;

 (B) a person of casual acquaintance with whom no substantial 
relationship exists; or

 (C) a person with whom a relationship has been established or
promoted for the purpose of victimization. 


Tex. Health & Safety Code Ann. § 841.002(2),(5) (Vernon 2003). The jury
instruction proposed by Almaguer and rejected by the trial court stated, "There must be
proof of serious difficulty in controlling behavior." The State maintains a separate
instruction is not needed, because volitional control is implicitly included within the issue
submitted to the jury.

 A trial court must submit "such instructions and definitions as shall be proper to
enable the jury to render a verdict." See Tex. R. Civ. P. 277; Union Pac. R.R. Co. v.
Williams, 85 S.W.3d 162, 166 (Tex. 2002). Rule 277 affords the trial court considerable
discretion in deciding what jury instructions are necessary and proper. See State Farm
Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997). An instruction is proper if it (1)
assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and
evidence. See Williams, 855 S.W.3d at 166. An instruction that is merely a phase or
shade of the controlling issue does not have to be submitted to the jury. See Sheldon L.
Pollack Corp. v. Falcon Indus., Inc., 794 S.W.2d 380, 383 (Tex. App.--Corpus Christi
1990, writ denied). An error in refusing a jury instruction is reversible only if it
"probably caused the rendition of an improper judgment." See Williams, 85 S.W.3d at
166. 

 When, as here, a case is governed by a statute, the jury charge should track the
language of the statutory provision as closely as possible. See Toennies v. Quantum Chem.
Corp., 998 S.W.2d 374, 377 (Tex. App.--Houston [1st Dist.] 1999), aff'd, 47 S.W.3d 473
(Tex. 2001). And Rule 277 requires the trial court, "whenever feasible," to submit the
cause on broad-form questions. See Tex. R. Civ. P. 277. Here, the charge tracked the
language of the statute, broad-form submission was used, and definitions were submitted
to assist the jury in answering the question of whether Almaguer is a sexually violent
predator. We find no separate instruction was needed. 

 In Kansas v. Hendricks, the Supreme Court upheld the constitutionality of the
Kansas Sexually Violent Predator Act, a statute similar to the one enacted by the Texas
Legislature. See Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501
(1997). The Court observed that a person's liberty interest from physical restraint is not
absolute, and there are "manifold restraints to which every person is necessarily subject
for the common good." Id., 521 U.S. at 357 (quoting Jacobson v. Massachusetts, 197
U.S. 11, 26, 25 S.Ct. 358, 49 L.Ed. 643 (1905)). (1) As Chief Justice Burger stated in his
concurring opinion in O'Connor v. Donaldson, "There can be little doubt that in the
exercise of its police power a State may confine individuals solely to protect society from
the dangers of significant antisocial acts or communicable disease." Donaldson, 422 U.S.
563, 582-83, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). In that vein, the Court in Hendricks
explained, "States have in certain narrow circumstances provided for the forcible civil
detainment of people who are unable to control their behavior and who thereby pose a
danger to the public health and safety." Hendricks, 521 U.S. at 357. 

 The Kansas Sexually Violent Predator Act establishes procedures for the civil
commitment of individuals, who, because of a mental abnormality or personality disorder,
are likely to engage in predatory acts of sexual violence. Hendricks, 521 U.S. at 350. 
The Act "requires a finding of future dangerousness, and then links that finding to the
existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not

impossible, for the person to control his dangerous behavior." Id. 521 U.S. at 358. 
(emphasis added). The Court held that the Kansas Act's coupling of proof of
dangerousness with the proof of some additional factor, such as mental illness or mental
abnormality, serves to "limit involuntary civil confinement to those who suffer from a
volitional impairment rendering them dangerous beyond their control." Id. The Court
found that the statutory criteria, and the evidence of Hendricks' condition satisfying those
criteria, complied with due process. Id., 521 U.S. at 360.

 Five years later, in Kansas v. Crane, the Court again was asked to consider an issue
relating to involuntary commitment under the Kansas Act: Must the State always prove that
a dangerous individual is completely unable to control his behavior? See Kansas v. Crane,
534 U.S. 407, 411, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The "inability to control
behavior" construct came from Hendricks, where the Court stated the Kansas Act required
proof that it is difficult, if not impossible, for the person to control himself. Hendricks,
521 U.S. at 358. In Crane, the State of Kansas argued that a showing of lack of control
was not required, while Crane argued the State must show a total lack of control. Crane,
534 U.S. at 411. And the State also argued that a volitional abnormality should not be the
only dangerous abnormality which may justify commitment. See Crane, 534 U.S. at 414. 
 Crane held that the State did not have to show a total lack of behavioral control in
order to civilly commit a person as a sexually violent predator. Id., 534 U.S. at 411. But
the Court disagreed with the State "insofar as it [sought] to claim that the Constitution
permits commitment of the type of dangerous sexual offender considered in Hendricks
without any lack-of-control determination." Id., 534 U.S. at 412.

 It is this language in Crane that prompts Almaguer to argue there must be a separate
jury finding on "serious difficulty in controlling behavior." In Crane, the Supreme Court
explained the difficulty-in-controlling-behavior language in Hendricks. The Kansas
Supreme Court had misconstrued Hendricks as requiring absolute lack of control. Crane,
534 U.S. at 411. Crane did not mandate a separate jury instruction on "control," and the
majority made no mention of the need for a new instruction or even additional jury
findings. Nor did the Court declare the Kansas Act unconstitutional as written. But Crane
did say that proof of "serious difficulty in controlling behavior" is required under
circumstances like those considered in Hendricks -- a "volitional" abnormality case. Id.
at 413. And Crane attempted to clarify the "difficult, if not impossible," language set out
in Hendricks as follows:

 The word 'difficult' indicates that the lack of control to which [the Hendricks
case] referred was not absolute. Indeed, as different amici on opposite sides of this case
agree, an absolutist approach is unworkable. Moreover, most severely ill people -- even
those commonly termed 'psychopaths' -- retain some ability to control their behavior. 
Insistence upon absolute lack of control would risk barring the civil commitment of highly
dangerous persons suffering severe mental abnormalities. 


Crane, 534 U.S. at 411-12 (citations omitted). The Court in Crane further observed as
follows:

 [W]e did not give to the phrase "lack of control" [in Hendricks] a
particularly narrow or technical meaning. And we recognize that in cases 
where lack of control is at issue, the 'inability to control behavior' will not
be demonstrable with mathematical precision. It is enough to say that there
must be proof of serious difficulty in controlling behavior. And this, when
viewed in light of such features of the case as the nature of the psychiatric
diagnosis, and the severity of the mental abnormality itself, must be
sufficient to distinguish the dangerous sexual offender whose serious mental
illness, abnormality, or disorder subjects him to civil commitment from the
dangerous but typical recidivist convicted in an ordinary criminal case. 


Id., 534 U.S. at 413 (emphasis added). 

 The Court in Crane rejected the bright-line rules advocated by Crane and the State
in favor of a case-specific analysis. Id., 534 U.S. at 411-413. The Court gave two
reasons for this approach. First, states retain considerable leeway in defining the mental
abnormalities and personality disorders that make an individual eligible for commitment. 
And second, the science of psychiatry is an "ever-advancing science, whose distinctions
do not seek precisely to mirror those of the law." Id., 534 U.S. at 413. The nature or
type of proof is subject to change as the field of psychiatry advances. 

 The Supreme Court said it had no opportunity to decide, in Crane or Hendricks, 
whether confinement based solely on an "emotional" abnormality would be constitutional. 
Crane, 534 U.S. at 415. Citing two earlier cases, Crane does point out that "when
considering civil commitment," the Court ordinarily does not distinguish "for
constitutional purposes among volitional, emotional, and cognitive impairments." Id., 534
U.S. at 415 (citing Jones v. United States, 463 U.S. 354, 103 S. Ct. 3043, 77 L.Ed.2d 694
(1983), and Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed 2d 323 (1979).

 We understand Crane, and the cases cited in Crane, to focus the constitutional
analysis on the seriousness of the abnormality and the seriousness of the danger to society
posed by the abnormality, and not fundamentally on the nature of the abnormality as
"volitional, emotional or cognitive." If the abnormality is volitional as in Hendricks, proof
of a serious difficulty in controlling behavior helps distinguish the dangerous sexual
offender whose abnormality subjects him to civil commitment from the typical recidivist
criminal. The "control" evidence is viewed in the light of other factors in the case such
as the severity of the abnormality and the nature of the diagnosis. Crane, 534 U.S. at 413.
But the due process analysis remains focused on distinguishing a person who because of
serious behavioral abnormality poses a serious danger, from a person who, though free of
such a condition, is dangerous for reasons more appropriately dealt with through the
criminal laws. 

 The statutory criteria submitted to the jury under the Texas statute in this case
describes the severity of the behavioral abnormality and the severity of the danger which
must be present to subject the person to civil commitment. The statutory definition
describes behavior caused by an abnormality that makes the person a menace to the health
and safety of another person. See § 841.002(2). In answering the question submitted to
it, the jury found that Almaguer suffers from a behavioral abnormality that "predisposes"
him, and makes him "likely," to engage in a predatory act of sexual violence, to the extent
that he is a menace to the health and safety of another. See §§ 841.002(2), 841.003. 

 The Austin court of appeals recently considered this jury submission issue in In re
Commitment of Browning, No. 03-02-00661-CV, 2003 Tex. App. LEXIS 6922, at *23-24
(Tex. App.--Austin, August 14, 2003, no pet. h.). There, Browning claimed the trial
court erred in refusing to submit a jury question asking whether he had serious difficulty
controlling his behavior. The Austin Court of Appeals held that the "broad-form
submission encompassed the required lack-of-control determination" and explained its
holding as follows:

 A finding that a person suffers from an emotional or volitional defect so
grave as to predispose him to threaten the health and safety of others with
acts of sexual violence entails a determination that he has 'serious difficulty
in controlling behavior.' 


We conclude here also the broad-form submission encompassed a lack-of-control
determination. 

 The jury here implicitly determined Almaguer's behavioral abnormality results in
serious difficulty with control: he has an emotional or volitional defect so grave as to cause
behavior that makes him a menace. See id; In re Thorell, 72 P.3d 708, 718-719 (Wash.
2003); Westerheide v. State, 831 So. 2d 93, 107-08 (Fla. 2002); In re Luckabaugh, 351
S.C. 122, 568 S.E.2d 338, 341, 348-349 (S.C. 2002).; In re Cain, No. 5-02-0088, 2003
Ill. App. LEXIS 758, at * 11-12 (Ill.5th June 18, 2003); In re Laxton, 254 Wis. 2d 185,
647 N.W.2d 784, 794-95 (Wis. 2002); but see Thomas v. State, 74 S.W.3d 789, 791-92
(Mo. 2002). The requested jury instruction simply would have emphasized one aspect of
this case already implicit in the broad-form question and statutory definitions. A trial court
does not err in refusing to submit an instruction on the law which is already encompassed
in the instructions and question. 

 Almaguer argues further that Crane requires a finding that the person's volitional
capacity is affected, not solely his emotional capacity. He says the definition of
"behavioral abnormality," and the question posed to the jury, allowed the jury to find him
to be a sexually violent predator on the basis of an emotional abnormality without finding
lack of control. We disagree. A condition which affects either emotional capacity or
volitional capacity to the extent a person is predisposed to threaten the health and safety
of others with acts of sexual violence is an abnormality which causes serious difficulty in
behavior control. 

 Almaguer also argues that his requested instruction is necessary because the
submitted definition of "behavioral abnormality" does not specify how much lack of
control is needed. Again, we disagree. The definitions and question make clear that a
person must have a behavioral abnormality that predisposes the person to commit sexually
violent acts, and that the abnormality makes it probable that the person will commit such
acts in the future and be a menace to health and safety. The definitions and question make
clear that the condition must be serious, and explain how serious. We conclude the trial
court did not err in refusing to submit Almaguer's requested instruction. See In re
Browning, 2003 Tex. App. LEXIS 6922, at *24. Issue two is overruled.

 In issue three, Almaguer contends Chapter 841 is unconstitutionally vague and
violates the separation of powers doctrine because of subparts (a)(4),(5),and (9) of section
841.082. He contends subpart 4 is unconstitutionally vague, because it requires the
person's participation in a "specific course of treatment" without specifying the treatment. 
He argues subpart 5 is also vague, because it requires the person to "submit to tracking
under a particular type of tracking service and to any other appropriate supervision"
without specifying what places the person cannot go, what conduct is expected of him, and
the meaning of "any other appropriate supervision." Finally, he asserts subpart 9 is vague
and violates the separation of powers doctrine, because it allows the trial judge to impose
any requirement determined necessary. We have considered these arguments in prior cases
and rejected them. In re Commitment of Shaw, No. 09-02-530 CV, Slip. op. at ______,
2003 WL ______ (Tex. App.--Beaumont Sept. 25, 2003, no pet. h.); In re Commitment
of Morales, 98 S.W.3d 288 (Tex. App.--Beaumont 2003, pet. filed); Beasley, 95 S.W.3d
at 608-609; Mullens, 92 S.W.3d at 887-888. We overrule issue three.

 Almaguer also asserts section 841.085 and the final judgment violate the Fifth
Amendment privilege against self-incrimination, because the commitment order requires
Almaguer to submit to periodic polygraph examinations. We rejected this argument in 
Mullens. See 92 S.W.3d at 888. We overrule issue four.

 The judgment of the trial court is affirmed.

 AFFIRMED. 

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on July 28, 2003

Opinion Delivered September 25, 2003


Before McKeithen, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION



 I concur except as to issue two; the trial court's refusal of a jury instruction
requiring proof of "serious difficulty in controlling behavior." I believe Kansas v. Crane,
534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), requires, upon proper request,
such a submission.

 In Crane, the United States Supreme Court determined "there must be proof of
serious difficulty in controlling behavior." Crane, 534 U.S. at 413. The Court vacated
the Kansas Supreme Court's judgment and remanded the case for further proceedings.
Crane, 534 U.S. at 415. Clearly concluding that the Crane majority was requiring a lack-of-control determination by the factfinder, Justices Scalia and Thomas, the Crane
dissenters, objected in part because they thought it would be too difficult to instruct a jury
as the majority was requiring. (2) Crane, 534 U.S. at 423.

 Subsequently, jurisdictions have reached varying conclusions in applying Crane to
challenges to SVP statutes. (3) As the majority does here, some jurisdictions have concluded
a jury necessarily finds a defendant lacks the requisite control when the State links the
individual's mental disorder and dangerousness. See In re Luckabaugh, 351 S.C. 122, 568
S.E.2d 338, 349 (2002) ("Inherent within the mental abnormality prong of the Act is a lack
of control determination . . .."); In re Laxton, 254 Wis. 2d 185, 647 N.W.2d 784, 793
(2002)(concluding proof of the nexus between the individual's mental disorder and
dangerousness "necessarily and implicitly involves proof that the person's mental disorder
involves serious difficulty for the person to control his or her behavior").

 But at least one jurisdiction has concluded, to be constitutional under Crane, jury
instructions must require that the "degree" to which a person cannot control his or her
behavior is "serious difficulty." Thomas v. State, 74 S.W.3d 789, 792 (Mo. 2002). To
comply with Crane, the Missouri Supreme Court mandated the instruction defining mental
abnormality should read: "As used in this instruction, 'mental abnormality' means a
congenital or acquired condition affecting the emotional or volitional capacity that
predisposes the person to commit sexually violent offenses in a degree that causes the
individual serious difficulty in controlling his behavior." Id.

 Another jurisdiction has remanded a case for a "lack of control" determination
without mandating specific language to be used by the trial court. In re Commitment of
W.Z., 173 N.J. 109, 801 A.2d 205, 219 (2002). And, yet another jurisdiction, while
determining Crane does not require a specific jury instruction, also concluded jurors would
not understand the link between the individual's mental disorder and a serious difficulty
in controlling behavior without additional instructions. In re Leon G., 204 Ariz. 15, 59
P.3d 779, 788 (2002). In Leon, the Arizona Supreme Court, thus, directed trial judges to
instruct juries in future SVP proceedings as follows: 

 The State must prove, beyond a reasonable doubt, that the person has a
mental disorder that makes it highly probable that the person will engage in
future acts of sexual violence. A finding of dangerousness, standing alone,
is not a sufficient ground to determine an individual is a sexually violent
person. An individual's dangerousness must be caused by a mental disorder
which, in turn, causes the person to have serious difficulty in controlling his
or her behavior.


Id.

 I agree with the Missouri and New Jersey Supreme Courts and with Justices Scalia
and Thomas that Crane requires the fact finder in an SVP commitment proceeding to
determine whether the individual has "serious difficulty in controlling his or her 
behavior." As Crane has mandated that constitutional due process requires such a
determination in commitment proceedings, state laws or rules of procedure are superseded
by this directive. U.S. Const. art. VI, cl. 2 ("This Constitution . . . shall be the supreme
Law of the Land; and the Judges in every State shall be bound thereby . . ..").

 Although appellant does not argue that our State procedures and case law would
require submission of his instruction, both the State and the majority address that issue
and, thus, compel me to do likewise.

 I am convinced the trial court here should have allowed Almaguer his instruction
under the Texas Rules of Civil Procedure. 

 Rule 277 requires the trial court, "whenever feasible" to submit the cause on
broad-form questions. See Tex. R. Civ. P. 277. Here, under the trial court's use of broad
form submission, the State maintains both that the volitional control issue was included in
the question asking the jury to determine if the appellant has a behavioral abnormality and
that the jury's "yes" answer to this question demonstrates the jury found Almaguer has
difficulty controlling his behavior.

 Rule 277 also requires the trial court to "submit such instructions and definitions
as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. (4)
 While
a trial court has considerable discretion in submitting broad-form jury questions, the
questions must properly submit the controlling fact issues for the jury's determination. See 
Interstate Northborough Partnership v. State, 66 S.W.3d 213, 224-25 (Tex. 2001); Triplex
Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995)("If an issue is properly
pleaded and is supported by some evidence, a litigant is entitled to have controlling
questions submitted to the jury."). A trial court reversibly errs when it denies a party
proper submission of a valid theory of recovery or a vital defensive issue raised by the
pleadings and evidence. Exxon Corp. v. Perez, 842 S.W.2d 629, 631 (Tex. 1992).

 Noting that trial judges must provide jury instructions explaining the applicable law
in terms the jury can readily understand, the Arizona Supreme Court found the reasoning
of the Laxton dissent persuasive: "'Although the words of [Wisconsin's SVP statute]
might be interpreted by lawyers and judges to include a link between the mental disorder
and a serious difficulty in controlling behavior, the jury instructions based directly on the
language of [Wisconsin's SVP statute] do not set forth this link for non-lawyers.'" In re
Leon G., 59 P.3d at 788 (quoting Laxton, 647 N.W.2d at 798). The Arizona Supreme
Court further reasoned: 

 Given the important interests involved in SVP proceedings for both the state
and the individual, no question should arise as to whether the jury
understands the importance of finding that a mental disorder, rather than a
voluntary decision to engage in repetitive criminal behavior, renders a
person dangerous within the meaning of the SVP statute.


In re Leon G., 59 P.3d at 788. I agree.

 Here, whether Almaguer has a serious difficulty in controlling his behavior is a
controlling fact issue under Crane. Thus, the trial court reversibly erred in not submitting
Almaguer's volitional control instruction to the jury. Perez, 842 S.W.2d at 631;
Commercial Bank of Texas, N.A. v. Luce, 92 S.W.3d 636, 640 (Tex. App.--Beaumont
2002, no pet.).

 I would sustain issue two, and reverse and remand for a new trial.





 DON BURGESS

 Justice

Dissent Delivered

September 25, 2003
1. For example, in earlier cases the Court held that involuntary quarantine for
contagious diseases and a requirement of mandatory vaccinations do not violate due
process. See Jacobson v. Massachusetts, 197 U.S. 11, 25, 29, 25 S.Ct. 358, 49 L.Ed.
643 (1905) (mandatory vaccination for smallpox); see also Compagnie Francaise de
Navigation a Vapeur v. Louisiana State Bd. of Health, 186 U.S. 380, 22 S.Ct. 811, 46
L.Ed. 1209 (1902) (permitting involuntary quarantine of persons suffering from
communicable diseases).
2. Justice Scalia wrote: "Today's opinion says that the Constitution requires the
addition of a third finding: (3) that the subject suffers from an inability to control behavior
- not utter inability, ante, at 870, and not even inability in a particular constant degree, but
rather inability in a degree that will vary 'in light of such features of the case as the nature
of the psychiatric diagnosis, and the severity of the mental abnormality itself,'ante, at
870." Crane, 534 U.S. at 423. 
3. See Peter C. Pfaffenroth, The Need for Coherence: States' Civil Commitment of
Sex Offenders in the Wake of Kansas v. Crane, 55 Stan. L. Rev. 2229, 2248 (2003).
4. The Texas Supreme Court observed that broad form submission under Rule 277
is not absolute and suggested that broad-form submission may not be feasible when the
governing law is unsettled. Westgate, Ltd. v. State, 843 S.W.2d 448, 455 n.6 (Tex.
1992).