SUPREME COURT OF ARIZONA
En Banc

|  |  |  |
|---|---|---|
| In re the Matter of LEON G. | ) | Arizona Supreme Court |
|  | ) | No. CV-01-0062-PR |
|  | ) |  |
|  | ) | Court of Appeals |
|  | ) | Division One |
|  | ) | No. 1 CA-MH 00-0004 |
|  | ) |  |
|  | ) | Yuma County Superior |
|  | ) | Court |
|  | ) | No. SC98M00050 |
| _____ | ) |  |
|  | ) | CONSOLIDATED WITH |
|  | ) |  |
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
|  | ) | No. CV-01-0063-SA |
| Petitioner, | ) |  |
|  | ) | Court of Appeals |
| v. | ) | Division One |
|  | ) | No. 1 CA-SA 01-0027 |
| HON. SUSAN A. EHRLICH, HON. | ) |  |
| CECIL B. PATTERSON, JR. AND HON. | ) | Maricopa County Superior |
| JAMES B. SULT, JUDGES OF THE | ) | Court |
| STATE OF ARIZONA, in and for the | ) | No. CV-MH-99-1189 |
| Arizona Court of Appeals, | ) |  |
|  | ) |  |
| Respondents, | ) |  |
|  | ) | **O P I N I O N** |
| ERIC WALKER, | ) |  |
|  | ) |  |
| Real Party in Interest. | ) |  |
|  | ) |  |
| _____ | ) |  |

Appeal from the Superior Court of Yuma County
No. SC98M00050
The Honorable Kirby D. Kongable, Judge
AFFIRMED
_____

Opinion of the Court of Appeals
Division One
199 Ariz. 375, 18 P.3d 169 (App. 2001)
VACATED
_____

Kristi A. Riggins, P.C.                                    Phoenix
     by   Kristi A. Riggins
Attorney for Leon G.

Janet Napolitano, Arizona Attorney General                    Phoenix
      by   Randall M. Howe, Chief Counsel,
           Criminal Appeals Section
      and  Consuelo M. Ohanesian, Assistant Attorney General
Attorneys for State of Arizona

Quarles & Brady Streich Lang, LLP                             Phoenix
      by   Michael Owen Miller                                Tucson
Attorneys for Amici Curiae Southern Arizona Center Against Sexual
Assault, Center Against Sexual Abuse, and Arizona Voice for
Victims, Inc.

Jamie McAlister Law Offices, LLC                              Phoenix
      by   Jamie McAlister
Attorney for Amicus Curiae Jamie McAlister

_____

Special Action from the Superior Court of Maricopa County
No. CV-MH-99-1189
The Honorable Alan S. Kamin, Judge
REVERSED and REMANDED

_____

Special Action from Order of the Court of Appeals
Division One
JURISDICTION ACCEPTED, RELIEF GRANTED

_____

Janet Napolitano, Arizona Attorney General                    Phoenix
      by   Randall M. Howe, Chief Counsel,
           Criminal Appeals Section
      and  Consuelo M. Ohanesian, Assistant Attorney General
Attorneys for State of Arizona

Daphne Budge                                                  Phoenix
Attorney for Walker

_____

McGregor, Vice Chief Justice

¶1      These consolidated actions consider whether Arizona's Sexually Violent Persons (SVP) act, Arizona Revised Statutes (A.R.S.) sections 36-3701 to 36-3717 (Supp. 2002), comports with the substantive due process principles the United States Supreme

2

Court outlined in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072 (1997), and *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867 (2002). We hold that the Arizona SVP act imposes proper procedures and evidentiary standards and sufficiently narrows the class of persons subject to commitment to assure compliance with constitutional requirements.

**I.**

¶2        A jury found beyond a reasonable doubt that Leon G. is a sexually violent person as defined in A.R.S. section 36-3701.7. Based on this finding, the trial judge ordered his commitment to the Arizona State Hospital, pursuant to A.R.S. section 36-3707.B.1.[1]  The Court of Appeals vacated the order of commitment,

---

[1]        Leon's case presents two jurisdictional questions for this court.  First, we must determine whether Leon waived his substantive due process challenge by not raising it on appeal. When Leon initially appealed from his commitment order, his appointed appellate counsel filed an *Anders* brief that raised no issues on appeal. *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967).  The right to a full review of the record on appeal when appointed counsel files an *Anders* brief, attached as it is to the Sixth Amendment right to counsel in criminal cases, does not apply in civil proceedings. *See, e.g., Ortega v. Holmes*, 118 Ariz. 455, 456, 577 P.2d 741, 742 (App. 1978) (prisoner's application for voluntary transfer to state hospital).  Commitment proceedings under the SVP act are civil in nature. *Martin v. Reinstein*, 195 Ariz. 293, 307, ¶¶ 39, 41, 987 P.2d 779, 793 (App. 1999).  Therefore, the *Anders* procedure does not apply to persons committed under the SVP act. Next, we must consider whether Leon's release from civil confinement renders his challenge to the SVP act moot. On September 12, 2002, the Yuma County Superior Court granted Leon's petition for permanent release from the Arizona State Hospital pursuant to A.R.S. § 36-3714.  Because Leon did not properly preserve his substantive due process challenge and is no longer confined, it appears that the question is both waived and

3

concluding that the Arizona SVP statute violated his substantive due process rights under the Fourteenth Amendment of the United States Constitution. *In re Leon G.*, 199 Ariz. 375, 381, ¶ 25, 18 P.3d 169, 175 (App. 2001). We granted the State's petition for review pursuant to Arizona Constitution Article VI, Section 5.3, Arizona Rule of Civil Appellate Procedure 23, and A.R.S. section 12-120.24. After the Court of Appeals issued its decision in *In re Leon G.*, Walker, who also had been adjudicated an SVP and committed to the State Hospital, moved for a release on the basis of that decision. The trial court granted his motion. The State then moved the Court of Appeals to issue a "blanket stay" of any releases granted pursuant to the Court of Appeals' *Leon G.* decision. The Court of Appeals temporarily stayed Walker's release but denied the request for a general stay. After the State filed a petition for special action in this court, we stayed all pending releases and accepted special action jurisdiction pursuant to Arizona Constitution Article VI, Section 5.3, and Arizona Rule of Procedure for Special Actions 8(b).

**¶3** In *In re Leon G.*, 200 Ariz. 298, 26 P.3d 481 (2001) *vacated by Glick v. Arizona*, __ U.S. __, 122 S. Ct. 1535 (2002), we

---

moot. Generally, this court will not examine waived or moot questions. An exception exists, however, for issues that are of great public importance or likely to reoccur. *Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984); *Corbin v. Rodgers*, 53 Ariz. 35, 39, 85 P.2d 59, 61 (1938). This action meets those exceptional criteria.

4

held that *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072 (1997), did not "impose 'volitional impairment' as a separate requirement for civil commitment statutes." *In re Leon G.*, 200 Ariz. at 301, ¶ 10, 26 P.3d at 484. We explained that the state satisfies its burden to show lack of control if the state establishes beyond a reasonable doubt not only that a person is dangerous, but also that a mental illness or disorder caused the dangerousness, making it highly probable that the person will engage in future acts of sexual violence. *Id*. at 302, 306, ¶¶ 12, 13, and 32, 26 P.3d at 485, 489.

¶4        Subsequent to our decision, the United States Supreme Court revisited *Hendricks* in *Kansas v. Crane,* 534 U.S. 407, 122 S. Ct. 867 (2002). After deciding *Crane*, the Court vacated our *Leon G.* opinion and remanded the case to this court "for further consideration in light of *Kansas v. Crane*." *Glick v. Arizona*, __ U.S. __, 122 S. Ct. 1535 (2002).

**II.**

¶5        In *Kansas v. Hendricks*, the United States Supreme Court considered the constitutionality of the Kansas Sexually Violent Predator Act (Kansas act) that governs the civil commitment of sexually violent predators.[2]  Recognizing that an individual's

---

[2]        Kansas permits the state to civilly commit an individual if a jury determines beyond a reasonable doubt that the person is a sexually violent predator. Kan. Stat. Ann. § 59-29a07(a) (Supp. 2001).  The statute defines a sexually violent predator as "any

5

"liberty interest is not absolute," the Court explained that "[s]tates have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." *Hendricks*, 521 U.S. at 356-57, 117 S. Ct. at 2079.

¶6      *Hendricks* describes the "narrow circumstances" in which states may involuntarily confine individuals.  First, "the confinement [must] take[] place pursuant to proper procedures and evidentiary standards." *Id*. at 357, 117 S. Ct. at 2080.  Next, the state must restrict commitment to "a limited subclass of dangerous persons." *Id*.  In addition, and of central importance here, "[a] finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment." *Id*. at 358, 117 S. Ct. at 2080.  Instead, civil commitment statutes must "couple[] proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" *Id*.  These added statutory requirements, factors such as mental illness or mental abnormality, "serve to limit involuntary civil confinement to those who suffer from a

---

person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." *Id*. § 59-29a02(a).  The statute defines mental abnormality as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." *Id*. § 59-29a02(b).  The statute does not define "personality disorder."

6

volitional impairment rendering them dangerous beyond their control." *Id*.

¶7    The United States Supreme Court revisited *Hendricks* and the Kansas act in *Kansas v. Crane,* addressing mainly the requisite proof of lack of control needed to satisfy substantive due process. The Kansas Supreme Court had interpreted *Hendricks* as mandating "a finding that the defendant cannot control his dangerous behavior" and reversed the trial court's order committing Crane.[3]  *In re Crane*, 7 P.3d 285, 290, 294 (Kan. 2000).  The Supreme Court held that although *Hendricks* does not require *total* or *complete* lack of control "there must be proof of serious difficulty in controlling behavior" in civil commitment proceedings.  *Crane*, 534 U.S. at __, 122 S. Ct. at 870.  This requisite lack of control, as well as "the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."  *Id*.

¶8    Accordingly, to comport with substantive due process as articulated in *Hendricks* and *Crane*, Arizona's SVP act must impose proper procedures and evidentiary standards.  Additionally, it must narrow the class of persons subject to commitment to only those who

---

[3]    Central to the court's decision was the fact that Crane suffered from a personality disorder and the Kansas act neglects to define personality disorder.  *In re Crane*, 7 P.3d at 290.

7

have "serious difficulty in controlling" their behavior to ensure the act sufficiently distinguishes those subject to civil commitment from the dangerous but typical recidivist.

¶9     We review the validity of a statute *de novo* and, if possible, construe it so as to uphold its constitutionality. *Stewart v. Robertson*, 45 Ariz. 143, 150-51, 40 P.2d 979, 983 (1935). We will not overturn an act of the legislature unless we are "satisfied beyond a reasonable doubt" that the statute fails to comply with the Constitution. *State v. Gastelum*, 75 Ariz. 271, 273, 255 P.2d 203, 204 (1953).

## A.

¶10    We first examine the procedures and evidentiary standards of Arizona's SVP act.[4] The statute defines an SVP as any person who "[h]as ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial" and who "[h]as a mental disorder that makes the person likely to engage in acts of sexual violence." A.R.S. § 36-3701.7. A mental disorder is "a paraphilia, personality disorder or conduct disorder or any combination of [those] that predisposes a person to commit sexual

---

[4]    Arizona's legislature enacted the Sexually Violent Persons statute as the "Sexually Violent Predators" act in 1995, and placed it in Title 13 of the codified statutes, along with the criminal laws of the state. In 1998, the legislature retitled the act "Sexually Violent Persons" and moved it to Title 36, which includes statutory provisions involving public health and safety. A.R.S. §§ 36-3701 to 36-3717.

8

acts to such a degree as to render the person a danger to the health and safety of others." A.R.S. § 36-3701.5.

¶11        An agency with jurisdiction over a person whom it believes to be an SVP must notify the attorney general or county attorney of the person's expected release from custody between thirty and one hundred eighty days before release. A.R.S. § 36-3702. The agency must provide the attorney general or county attorney with information about the underlying sexual offense and the person's psychiatric condition. *Id*. The attorney general or county attorney may then file a petition in superior court alleging that the person is an SVP. A.R.S. § 36-3704.

¶12        Upon receipt of such petition, the superior court judge determines whether probable cause exists to believe that the person is an SVP. A.R.S. § 36-3705. The person named in the petition may request a hearing on the issue of probable cause, at which he or she may introduce evidence, cross-examine witnesses, and review all information in the court's file. *Id*. If the judge determines that probable cause exists, the judge must order the person to be detained in a licensed facility under the supervision of the superintendent of the Arizona State Hospital and must order an evaluation of the person at the county's expense. *Id*.

¶13        Within one hundred twenty days of the petition, the court conducts a trial to determine if the person named in the petition

9

is an SVP.[5]  A.R.S. § 36-3706.  Either party may request a trial by jury.  *Id*.  The person named in the petition has a right to counsel, which the state must provide if the person is indigent.  A.R.S. § 36-3704.C.  In addition, the person has a right to an evaluation by a competent professional, appointed by the court if the person is indigent.  A.R.S. § 36-3703.

¶14    The state has the burden of proving beyond a reasonable doubt that the person meets the statutory definition of an SVP.  A.R.S. § 36-3707.  If the trier of fact finds, beyond a reasonable doubt, that the person is an SVP, then the court must either "[c]ommit the SVP to the custody of the department of health services for placement in a licensed facility" or "[o]rder that the [SVP] be released to a less restrictive alternative" if appropriate.  *Id*.  If the SVP is committed, he or she "shall receive care, supervision or treatment until the person's mental disorder has so changed that the person would not be a threat to public safety if the person was conditionally released to a less restrictive alternative or was unconditionally discharged."  *Id*.  The SVP must be examined annually to determine whether commitment remains appropriate.  A.R.S. § 36-3708.  Either the state or the SVP may petition the court for discharge or conditional release to

---

    [5]    If the person named in the complaint was found incompetent to stand trial on the sexual offense charges, the court must determine, beyond a reasonable doubt, that the person committed the charged offense before turning to the question whether the person should be committed under the SVP act.  A.R.S. § 36-3707.D.

10

a less restrictive setting with appropriate treatment and supervision. A.R.S. §§ 36-3709, 36-3714. Either petition results in a hearing, at which the SVP may be present and participate, and the state bears the burden of proving that conditional release or discharge would be inappropriate. *Id*.

¶15 We conclude that Arizona's SVP act imposes proper procedures and evidentiary standards in compliance with the Constitution. *See Vitek v. Jones*, 445 U.S. 480, 500, 100 S. Ct. 1254, 1268 (1980)(Powell, J., concurring)(stating due process requires the state to provide "qualified and independent assistance" to an inmate whom the state seeks to involuntarily transfer to a mental hospital); *Addington v. Texas*, 441 U.S. 418, 433, 99 S. Ct. 1804, 1813 (1979)(holding states must prove by at least clear and convincing evidence that an individual should be involuntarily committed); *O'Connor v. Donaldson*, 422 U.S. 563, 574-75, 95 S. Ct. 2486, 2493 (1975)(explaining that even if an initial confinement "was founded upon a constitutionally adequate basis," a state cannot continue to confine that individual "after that basis no longer exist[s]"); *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858 (1972) (explaining "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed").

**B.**

¶16 Leon and Walker argue that Arizona's SVP act lacks any

11

requirement that the state prove an alleged SVP's mental disorder causes him or her to have "serious difficulty in controlling behavior." Focusing on the absence of words such as "capacity" or "control" in Arizona's definitions of SVP and mental disorder, Leon and Walker argue we must now declare Arizona's SVP act unconstitutional in light of *Crane*. They concede that the Arizona SVP act in its original form might have satisfied the *Crane* standard but argue the current version falls short of complying with *Crane.*

¶17    When the legislature originally enacted the SVP act, it used the term mental abnormality rather than mental disorder. The definition of mental abnormality included the clause "a congenital or acquired condition that affects the emotional or volitional capacity of a person."[6]  1995 Ariz. Sess. Laws ch. 257 § 7.  The legislature, however, has since amended the act, and the definition of mental disorder no longer includes this clause.  This deletion, argue Leon and Walker, indicates that the legislature did not intend "serious difficulty in controlling behavior" to be one of the elements of an involuntary commitment, and, therefore, the act

---

[6]    As originally enacted, a mental abnormality meant "a congenital or acquired condition that affects the emotional or volitional capacity of a person and that predisposes the person to commit criminal sexual acts to such a degree as to render the person a menace to the health and safety of others."  1995 Ariz. Sess. Laws ch. 257 § 7.  This definition is virtually identical to the Kansas definition of mental abnormality that the United States Supreme Court upheld in *Hendricks*.  *See* Kan. Stat. Ann. § 59-29a02(b).

12

does not comply with the requirements articulated in *Crane*. The State responds that *Crane* does not demand that an SVP statute use particular words, so long as the statute narrows commitment to those who lack control over their behavior.

¶18    Leon and Walker correctly note that Arizona's SVP act does not include an express statutory provision requiring the state to prove an individual has "serious difficulty in controlling" his or her behavior. We do not agree, however, that due process, under *Hendricks* and *Crane*, mandates explicit references to words such as "control" or "capacity" in civil commitment statutes for several reasons.

¶19    First, Leon and Walker's interpretation of *Crane* seems to contradict the Court's warning that the constitutionality of a commitment statute does not depend upon the particular language that a legislature chooses to narrow the class of persons eligible for commitment. *Hendricks*, 521 U.S. at 359, 117 S. Ct. at 2081 ("[W]e have never required state legislatures to adopt any particular nomenclature in drafting civil commitment statutes."). In *Crane*, the Court specifically declined the parties' invitation to impose a "bright-line rule[]" and reiterated that "[s]tates retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment." *Crane*, 534 U.S. at __, 122 S. Ct. at 871. The Court's reluctance to require particular statutory language

13

reflects its concern that "courts should pay particular deference to reasonable legislative judgments" in the area of mental health regulations. *Jones v. United States*, 463 U.S. 354, 365, n.13, 103 S. Ct. 3043, 3050 (1983); *see also Addington*, 441 U.S. at 431, 99 S. Ct. at 1812 (explaining "states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold" and "[a]s the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum").

¶20    More importantly, the Court upheld the Kansas SVP statute, which imposes no express "difficulty in controlling behavior" requirement.  In *Hendricks*, the Court did not focus on the Kansas legislature's use of the word "capacity" in defining mental abnormality.  Rather the Court concentrated on the statutorily-required *link* between "a finding of future dangerousness" and a "finding . . . of a 'mental abnormality' or 'personality disorder.'"  *Hendricks*, 521 U.S. at 358, 117 S. Ct. at 2080.  The Kansas act's coupling of "proof of dangerousness with the proof . . . of a 'mental abnormality,'" rather than the act's use of the term "capacity," is what "serve[d] to limit involuntary civil confinement to those who suffer from a volitional impairment."  *Id*.  The *Crane* opinion further explained that the Court "did not give to the phrase 'lack of control' a particularly narrow or technical meaning."  534 U.S. at __, 122 S. Ct. at 870.

14

¶21     We conclude that *Crane*'s statement that a state must prove "serious difficulty in controlling behavior" does not require express statutory language, but rather reiterates the requirement that an SVP statute substantially and adequately narrows the class of individuals subject to involuntary civil commitment. *See Id*. *Crane* does not alter the Court's analysis in *Hendricks* that focused on the *link* between proof of dangerousness and proof of mental abnormality in upholding the Kansas Act. *Hendricks* and *Crane* require the state to establish that a defendant suffers from a mental incapacity that causes difficulty in controlling behavior to ensure that the state distinguishes between dangerous sexual offenders subject to involuntary commitment from typical recidivists. *Hendricks* and *Crane*, however, afford legislatures the autonomy to determine how the state must prove the requisite lack of control.

## III.

¶22     The question, then, is whether Arizona's SVP statute sufficiently narrows the class of persons subject to civil commitment as SVPs. We conclude the statute meets that standard. Although the statute does not mimic *Crane's* "serious difficulty in controlling behavior" language, the statute necessarily requires the state to prove that an alleged SVP's dangerousness results from a mental impairment rather than from voluntary behavior.

15

**¶23** To civilly commit an individual under the SVP act, the state must prove, beyond a reasonable doubt, that the individual is an SVP. A.R.S. § 36-3707.A. The statute defines an SVP as an individual who "[h]as ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial." A.R.S. § 36-3701.7. In addition, the person must exhibit "a *mental disorder that makes* the person *likely* to engage in acts of sexual violence." *Id*. (emphasis added).[7]

**¶24** Although the SVP act applies only to those persons whose mental disorder makes them likely to engage in future acts of sexual violence, the statute does not define "likely." Because the meaning attached to the term affects the scope of the class of persons subject to civil confinement under the act, we cannot compare Arizona's statute with the standard set forth in *Hendricks* and *Crane* without first defining this central term.

**¶25** "Likely" is not a legal term with a fixed meaning. The dictionary defines "likely" as meaning "having a high probability of occurring or being true; very probable." Merriam-Webster's Collegiate Dictionary 674 (10th ed. 1999). Courts have attached

---

[7] Mental disorder means a "paraphilia, personality disorder or conduct disorder or any combination of [those] that predisposes a person to commit sexual acts to such a degree as to render the person a danger to the health and safety of others." A.R.S. § 36-3701.5.

various meanings to the term, depending to a large extent upon the context within which it is used. *E.g., United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985) (likely means more likely than not; more probable than not); *In re Foster,* 426 N.W.2d 374, 377 (Iowa 1988)(likely means "probable or reasonably to be expected"); *Holden v. Missouri R. Co.*, 84 S.W. 133, 136 (Mo. Ct. App. 1904) (likely means "reasonably certain to accrue in the future"). The Arizona Court of Appeals has interpreted a criminal statute referring to "circumstances likely to produce death or serious physical injury," A.R.S. section 13-3623 (2001), as meaning probable as compared with possible. *State v. Johnson*, 181 Ariz. 346, 350, 890 P.2d 641, 645 (App. 1995); *see also Martin v. Reinstein*, 195 Ariz. 293, 314 ¶ 68, 987 P.2d 779, 800 (App. 1999) (holding the SVP statute requires a probability, not a mere possibility of future dangerousness).

¶26    As those decisions demonstrate, defining "likely" as meaning "probable" raises no due process concerns. The question for us, however, is not which definition of "likely" would satisfy constitutional requirements, but which definition the legislature intended to attach to the term.

¶27    In this instance, after considering other statutory language, we conclude that the legislature's use of the term "likely" reflects its decision to require a standard somewhat higher than "probable." *Dietz v. Gen. Elec. Co.*, 169 Ariz. 505,

17

510, 821 P.2d 166, 171 (1991) (explaining that when the meaning of a statutory term is not clear, we look to the overall language of the statute for assistance). The legislature provided guidance as to the meaning of "likely" in section 10 of the SVP act, which sets out the legislative findings that led to the passage of the act. 1995 Ariz. Sess. Laws ch. 257 § 10. Subsection 3 directly addresses the civil commitment procedure adopted as part of the act. In that subsection, the legislature noted that, for a "small but extremely dangerous group of sexually violent predators," the "*likelihood* of the sex offenders engaging in repeat acts of predatory sexual violence is *high*." *Id.* (emphasis added). That language bears a striking similarity to the common and dictionary definitions of "likely" as being "highly probable." Construing the term as meaning "highly probable" also gives effect to the legislative decision to distinguish the standard in the SVP act from that in the general commitment statute, which requires showing behavior that "can reasonably be expected . . . to result in serious physical harm." A.R.S. § 36-501.4 (1993). If the legislature had intended the same standard to apply in the two statutory schemes, we think the legislature would have used the same terms. Use of "likely" rather than "reasonably expected" indicates the legislature intended to adopt a more stringent standard in the SVP act.[8]

---

[8] Other jurisdictions also have interpreted "likely" in sexually dangerous persons civil commitment statutes as meaning

18

¶28      The Arizona SVP statute thus permits civil commitment of a person as an SVP only if the state proves, beyond a reasonable doubt, that (1) the person has a mental disorder, as defined in A.R.S. section 36-3701, that predisposes the person to commit sexual acts to such a degree that he or she is dangerous to others and (2) the *mental disorder makes it highly probable* that the person will engage in acts of sexual violence.   The dictionary defines "make" as meaning "to cause to act in a certain way" or to "compel."   Merriam-Webster's Collegiate Dictionary 702 (10th ed. 1999).   Recently, the Arizona Court of Appeals interpreted "makes," as used in the SVP act, as meaning "impair[ing] or tend[ing] to overpower the person's ability to control his or her behavior."   *In re Wilber W.,* __ Ariz. __, ¶ 18, 53 P.3d 1145, 1149 (App. 2002). We agree with and adopt this interpretation of the statutory language.   As thus construed, the statute requires that the state prove that a person has "serious difficulty in controlling" his or her dangerous behavior.   That is, if the state establishes the required nexus between a person's mental disorder and the person's dangerousness and proves that the disorder, rather than a voluntary

---

"highly probable."  *See, e.g.*, *In re Linehan*, 594 N.W.2d 867, 878 (Minn. 1999) (present disorder makes it "highly likely" that the defendant will engage in future harmful sexual acts); *Westerheide v. Florida*, 767 So. 2d 637, 652-53 (Fla. Dist. Ct. App. 2000)("likely" means "highly probable or probable and having a better chance of existing or occurring than not").  The reasoning of those courts, interpreting state statutes similar to ours, supports our conclusion.

decision, makes the person act in a certain manner, the state has shown that the person has "serious difficulty in controlling" his or her behavior.

¶29    Accordingly, the Arizona SVP act requires much more than a finding of dangerousness.  The statute permits confinement only if the state demonstrates the cause and effect relationship between the alleged SVP's mental disorder and a high probability the individual will commit future acts of violence. Typical recidivists who choose to commit acts of sexual violence do not fall within the purview of Arizona's SVP act.  The state may commit only those persons who lack control because a mental disorder, not a voluntary choice, makes them likely to commit sexually violent acts.  Hence, although the statute does not expressly refer to "serious difficulty in controlling behavior," the statutory language does embody the functional equivalent of that phrase.  Therefore, Arizona's SVP act distinguishes "the dangerous sexual offender whose serious mental . . . disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case" in compliance with *Hendricks* and *Crane*. *Crane*, 534 U.S. at __, 122 S. Ct. at 870.

¶30    Other jurisdictions confronted with challenges to SVP statutes after *Crane* have concluded that a jury necessarily finds a defendant lacks the requisite control when the state links the individual's mental disorder and dangerousness.  *See In re*

20

*Luckabaugh,* 568 S.E.2d 338, 349 (S.C. 2002) ("Inherent within the mental abnormality prong of the Act is a lack of control determination."); *In re Laxton*, 647 N.W.2d 784, 793 (Wis. 2002) (concluding proof of the nexus between the individual's mental disorder and dangerousness "necessarily and implicitly involves proof that the person's mental disorder requires serious difficulty for such person in controlling his or her behavior"). The reasoning of these courts further supports our interpretation of the Arizona SVP act.

### C.

¶31    Some jurisdictions, after holding that the state, by establishing a nexus between the individual's mental disorder and dangerousness, necessarily proves that an alleged SVP has difficulty in controlling his behavior, have declined to require a specific instruction including the *Crane* "serious difficulty in controlling behavior" language. *See Illinois v. Hancock*, 771 N.E.2d 459, 463-66 (Ill. App. Ct. 2002); *Laxton*, 647 N.W.2d at 795. *But see In re Thomas*, 74 S.W.3d 789, 792 (Mo. 2002). We agree with these courts that due process requirements, as set forth in *Hendricks* and *Crane,* do not mandate a specific jury instruction.

¶32    As a matter of practice in Arizona, however, trial judges provide jury instructions explaining the applicable law in terms the jury can readily understand. *Noland v. Wootan*, 102 Ariz. 192, 194, 427 P.2d, 143, 145 (1967); *Barrett v. Samaritan Health Servs.,*

21

153 Ariz. 138, 143, 735 P.2d 460, 465 (App. 1987). We find the reasoning of the dissent in *Laxton* persuasive:

> Although the words of [Wisconsin's SVP statute] might be interpreted by lawyers and judges to include a link between the mental disorder and a serious difficulty in controlling behavior, the jury instructions based directly on the language of [Wisconsin's SVP statute] do not set forth this link for non-lawyers.

*Laxton*, 647 N.W.2d at 798 (Abrahamson, C.J., dissenting). Given the important interests involved in SVP proceedings for both the state and the individual, no question should arise as to whether the jury understands the importance of finding that a mental disorder, rather than a voluntary decision to engage in repetitive criminal behavior, renders a person dangerous within the meaning of the SVP statute. Accordingly, trial judges should specifically instruct juries as follows:

> The State must prove, beyond a reasonable doubt, that the person has a mental disorder that makes it highly probable that the person will engage in future acts of sexual violence. A finding of dangerousness, standing alone, is not a sufficient ground to determine an individual is a sexually violent person. An individual's dangerousness must be caused by a mental disorder which, in turn, causes the person to have serious difficulty in controlling his or her behavior.

¶33 In Leon's commitment proceedings, the trial judge instructed the jury using language similar to the instruction stated above.[9] The judge, however, instructed that "[p]roof of

---

[9] In Leon's commitment proceeding the judge instructed the jury:
> "Likely" means of such nature or so circumstantial as to make something probable and having a better chance of existing or occurring than not. A finding of

22

dangerousness must be caused by an existence of a mental disorder which makes it difficult, *if not impossible*, for the respondent to control his dangerous behavior." (Emphasis added). Judges should not use the word "impossible" in describing a defendant's inability to control his or her behavior because this incorrectly implies the state must prove an alleged SVP lacks *complete* or *total* control. Due process does not impose such an absolutist approach. *See Crane*, 534 U.S. at __, 122 S. Ct. at 870.

## IV.

¶34 For the foregoing reasons, we hold Arizona's SVP act complies with the substantive due process principles enunciated in *Hendricks* and *Crane*. Accordingly, we vacate the Court of Appeals' decision in *In re Leon G.*, 199 Ariz. 375, 18 P.3d 169 (App. 2001), and affirm the trial court's decision.

¶35 Because Walker appears before us in a special action, we cannot determine from the limited record available whether Walker's

---

dangerousness, standing alone, is not a sufficient ground to convict respondent of being a sexually violent person. Proof of dangerousness must be caused by an existence of a mental disorder which makes it difficult, if not impossible, for the respondent to control his dangerous behavior either immediately or over time.

Leon requested the instruction defining "likely" in this manner and did not raise its appropriateness as an issue on appeal. He therefore waived review on this issue. *See State v. Miranda*, 200 Ariz. 67, 68, ¶ 1, 22 P.3d 506, 507 (2001). The record in Walker's case does not include the jury instructions from his commitment proceeding. Walker, like Leon, did not challenge the proprietary of the instructions used at his trial.

23

jury received appropriate instructions, the extent of the evidence presented to establish Walker as an SVP, whether Walker contested the evidence presented, or which, if any, issues remain available for Walker to raise at this point. We also cannot determine whether, if Walker has preserved issues for appeal and can timely raise those issues, any error asserted would constitute harmless error. Therefore, we reverse the trial court's order releasing Walker from the Arizona State Hospital and remand for further proceedings consistent with this opinion.

 

_____
Ruth V. McGregor
Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Stanley G. Feldman, Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice