NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE: FREDERICK B.

No. 1 CA-MH 18-0067 SP
FILED 7-25-2019

Appeal from the Superior Court in Navajo County
No. S0900CV99000033
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

COUNSEL

Navajo County Attorney's Office, Holbrook
By Michael R. Shumway
*Counsel for Appellee*

LeGate, Penrod & Associates PLLC, Show Low
By Michael S. Penrod
*Counsel for Appellant*

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Diane M. Johnsen joined.

**S W A N N**, Chief Judge:

¶1        Frederick B. appeals the superior court's denial of his petition for discharge from commitment under Arizona's Sexually Violent Persons Act ("the Act").   Though the hearing on Frederick's petition was significantly delayed, Frederick did not timely seek relief and ultimately suffered no prejudice.   Likewise, the state's failure to promptly serve a formal disclosure statement caused no prejudice.   Finally, Frederick's willful refusal to participate in annual examinations did not entitle him to release.  We therefore affirm.

## SEXUALLY VIOLENT PERSONS ACT

¶2        The Act, A.R.S. § 36-3701 *et seq.*, permits the court to commit sexually violent persons ("SVPs") to the custody of the department of health services.   A.R.S. § 36-3707(B)(1).   An SVP is to receive care, supervision, or treatment, *id.*, and is to be examined annually to determine whether conditional release to a less restrictive alternative would serve his or her best interests and adequately protect the community, A.R.S. § 36-3708(A).  Further, when the SVP is subject to conditional-release terms and conditions, his or her service providers must file periodic reports stating whether he or she is complying with the terms and conditions of release. A.R.S. § 36-3710(F).  If the department of health services' director or the state hospital's superintendent determines that the SVP's disorder has so changed that he or she is not likely to engage in acts of sexual violence if conditionally released to a less restrictive alternative or if discharged, the director or superintendent must allow the SVP to petition the court for such release or discharge.  A.R.S. §§ 36-3709(A), -3714(A).  But even absent such a determination, the SVP has an absolute right to annually petition the court for conditional release to a less restrictive alternative or discharge.  A.R.S. §§ 36-3709(B), -3714(B).

## FACTS AND PROCEDURAL HISTORY

¶3        Frederick was committed under the Act in 1999.   He has since remained at the Arizona Community Protection and Treatment Center

("the Center"), conditionally released in 2005 to an on-site less-restrictive-alternative program. Throughout his commitment, Frederick has filed multiple unsuccessful petitions for conditional release to a less restrictive alternative or discharge. This appeal concerns his 2016 discharge petition. He was represented by counsel at all relevant times.

¶4         In July 2016, the state filed a copy of Frederick's annual-examination report. Relying entirely on collateral sources because Frederick had refused to participate in the examination, the examiner concluded that commitment remained warranted because Frederick continued to suffer from mental disorders that made him likely to engage in acts of sexual violence. The Center's next quarterly report, filed on October 20, 2016, stated that Frederick was not in compliance with the terms and conditions of his conditional release.

¶5         Frederick filed a petition for discharge on October 21, 2016, arguing that "the quarterly report does not address [Frederick]'s ongoing condition or the likelihood that a man of his age would engage in acts of sexual violence." The state filed an opposition to Frederick's petition on November 3, and Frederick filed a reply on November 10. No hearing was requested or set.

¶6         On December 22, two months after filing his petition, Frederick filed a request for discharge based on the state's failure to organize a hearing on his petition within the 45-day post-petition period prescribed by A.R.S. § 36-3714(A). The state opposed Frederick's request, arguing that § 36-3714(A) did not apply. Frederick filed another request for discharge on January 6, 2017. The court did not rule on either of Frederick's requests for summary relief, but did set the discharge petition for hearing on March 21, five months after Frederick's initial petition.

¶7         In anticipation of the hearing, Frederick submitted a disclosure statement and the state moved for a telephonic appearance by a potential witness, Dr. John St. Clair, who had signed the October 2016 quarterly report as the Center's director of psychology.

¶8         The week before the hearing, Frederick moved to preclude the state's evidence based on its failure to provide disclosure. The state then promptly supplied a disclosure statement.

¶9         At the outset of the March 21 hearing, the state expressed its desire to brief the motion to preclude. In response, Frederick again complained that the state had failed to ensure a timely hearing. The court permitted the state to file a response to the preclusion motion and set the

matter for oral argument in mid-April. The court later reset the argument to May 1 for unstated reasons.

¶10            In its written opposition to the motion to preclude, the state asserted that Frederick had already received copies of all relevant reports, knew from prior hearings that the state's witness would be a professional from the Center, and knew from the state's motion for telephonic appearance that the professional would be Dr. St. Clair. At the May 1 argument, Frederick conceded that he had received relevant reports and now knew the identity of the state's proposed witness.

¶11            On June 16, approximately a month and a half after the oral argument and eight months after Frederick petitioned for discharge, the court ruled that Frederick had suffered no prejudice with respect to disclosure and sanctions were not warranted.

¶12            Several weeks later, on July 6, the state moved the court to set the evidentiary hearing. The state also filed a 2017 annual-examination report. The report noted that Frederick had again refused to participate, and relied on collateral sources to conclude that Frederick's commitment should continue unchanged. The state filed an amended disclosure statement identifying the report's author, independent contractor Dr. Celice Korsten, as a potential witness at the evidentiary hearing.

¶13            The court granted the state's motion to set more than two months later, on September 22. The court set the evidentiary hearing for October 17, almost one full year after Frederick first filed his petition. The hearing was thereafter continued multiple times, several times on Frederick's motion and once on the state's motion with no objection by Frederick. The hearing finally took place on January 30, 2018, approximately fifteen months post-petition, with Dr. Korsten testifying as the sole witness.

¶14            Two months after the hearing, on March 30, 2018, the court ruled that Frederick was ineligible for either discharge or conditional release to a less restrictive alternative. Frederick appeals.

**DISCUSSION**

I.    FREDERICK IS NOT ENTITLED TO DISCHARGE BASED ON THE DELAYED RESOLUTION OF HIS PETITION.

¶15    Frederick first contends that he was denied due process, and therefore must be discharged, because the court did not timely hear his discharge petition.

¶16    A.R.S. § 36-3714 requires that a discharge petition, whether filed by the SVP with the state's permission or in exercise of his or her independent annual right, be decided after an evidentiary hearing at which the state bears the burden to prove beyond a reasonable doubt that the SVP's mental disorder has not changed and that he or she remains a danger to others and is likely to engage in acts of sexual violence if discharged.[1] A.R.S. § 36-3714(A)–(C); *In re Leon G.*, 204 Ariz. 15, 20, ¶ 14 (2002). Subsection (A) of the statute describes the SVP's right to petition for discharge with the state's permission, and then specifies that "[t]he court shall hold a hearing on the petition for discharge within forty-five days after receiving the petition," unless it "continue[s] the hearing on the request of either party and a showing of good cause or on its own motion if the respondent will not be substantially prejudiced."  Subsection (B) of the statute establishes the SVP's separate unconditional right to petition annually for discharge, without prescribing when such a petition must be heard.

¶17    Frederick contends that both varieties of discharge petition are subject to the 45-day hearing deadline set forth in subsection (A).  The state contends that because the deadline is specified in subsection (A) only, it applies only to the state-sanctioned petitions described in that subsection.

¶18    We resolve questions of statutory construction de novo, looking to the statute as a whole.  *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017).  "Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, [we] will not read that term into the section from which it was excluded."  *Arizona Bd. of Regents v. State*, 160 Ariz. 150, 157 (App. 1989); *see also, e.g., Stambaugh*, 242

---

[1]    A.R.S. § 36-3709 provides an identical scheme for petitions for conditional release to a less restrictive alternative.  The superior court cited § 36-3709 and concluded that Frederick was ineligible for either conditional release to a less restrictive alternative or unconditional discharge. Frederick's petition, however, was for discharge only.

Ariz. at 511, ¶ 15. Applying that principle, we conclude that because the legislature specified the 45-day hearing deadline in § 36-3714(A) only, the deadline applies only to petitions filed under subsection (A), and not to petitions (like Frederick's) filed under subsection (B). Subsection (B) prescribes no deadline for hearings on petitions filed by an SVP in the exercise of his or her annual right.

**¶19** The foregoing statutory analysis does not end our inquiry. Commitment under the Act serves important public interests: it protects the community from dangerous individuals, and it ensures that such individuals receive treatment. *Martin v. Reinstein*, 195 Ariz. 293, 299, 313, ¶¶ 2, 61 (1999). But it also restrains the SVP's liberty, potentially for life. *Id.* at 316, 322–23, ¶¶ 74, 108, 110; *Leon G.*, 204 Ariz. at 17–18, ¶¶ 1, 5. Such deprivation of liberty cannot be imposed without due process of law. *See* U.S. Const. amend. IV, XIV; Ariz. Const. art. 2, § 4.

**¶20** The Act's evidentiary standards and procedures, including the annual-examination requirement and annual-petition right, comport with due process. *Martin*, 195 Ariz. at 322–23, ¶¶ 109–10; *In re Leon*, 204 Ariz. at 17, 20, ¶¶ 1, 14–15. The annual examination by the state, and the SVP's annual opportunity to obtain judicial review, serve to ensure that commitment continues only when justified. *See Leon G.*, 204 Ariz. at 20, ¶ 15 (noting that "even if an initial confinement 'was founded upon a constitutionally adequate basis,' a state cannot continue to confine that individual 'after that basis no longer exist[s],'" and "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed" (citations omitted)). Those safeguards are deprived of their significance when judicial review does not occur within a reasonable time. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (citation omitted)); *In re Commitment of Beyer*, 287 Wis. 2d 1, 25, ¶ 31 (Wis. 2006) (holding that Wisconsin's sexually violent person statutes, "[b]y guaranteeing annual periodic examinations and judicial review absent a ch. 980 committee's affirmative waiver thereof, . . . assure that a circuit court will expeditiously review the continued validity of a ch. 980 commitment" in order "to avoid defeating the purpose of the re-examination process, as well as the committed person's due process rights").

**¶21** The superior court and the state, therefore, should make diligent efforts to promptly address and resolve an SVP's petition. *Cf. Ugalde v. Burke*, 204 Ariz. 455, 458, ¶ 13 (App. 2003) (holding, in context of

trial on initial petition for commitment under Act, that "the State has a duty to prosecute these cases diligently and that trial courts also have a duty to manage these cases to comply with the [statutory] deadline, allowing postponements only when justified under [the statute]"). The court did not hear Frederick's petition for approximately fifteen months. Frederick did not consent to most of the delay and indeed objected on several occasions to the passage of time. And on this record, much of the delay appears unjustified. But contrary to Frederick's contention, discharge is not the remedy.

¶22          Frederick's reliance on *Fuller v. Olson*, 233 Ariz. 468 (App. 2013), is misplaced. In *Fuller*, we held that a lengthy and unexcused delay in bringing the state's initial commitment petition to trial prejudiced the potential SVP and entitled him to release. *Id.* at 473–74, ¶¶ 14–16. But Frederick, unlike the individual in *Fuller*, is not a *potential* SVP who received no hearing—he is a currently committed SVP who did eventually receive a hearing that established (correctly, as Frederick concedes) he continues to be ineligible for discharge.

¶23          When the hearing on an SVP's status-change petition is unreasonably delayed, the SVP may seek to compel the hearing. *See Beyer*, 287 Wis. 2d at 33, ¶ 54; *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 607–08 (Kan. App. 2017). At the appellate-court level, the SVP may obtain relief on special action in the form of an order directing that the hearing promptly be held. *See* Ariz. R.P. Spec. Act. 1(a), 3(a) (authorizing appellate courts to correct on special action a defendant's failure to perform a non-discretionary duty required by law when there is no equally plain, speedy, and adequate remedy by appeal). But we can offer no retrospective remedy when we receive the case on appeal, after the hearing has occurred and correctly resulted in no change of status. In such circumstances, the delay, however unreasonable, will have caused the SVP no prejudice. (We note that, unlike in *Fuller*, the SVP continues to receive treatment pending a release hearing.) Granting the SVP a change in status on procedural grounds when the change is not justified on the merits would contravene logic and the purposes of the Act. *See Beyer*, 287 Wis. 2d at 33, ¶ 53 (holding that delayed review of SVP's status under Wisconsin's sexually violent persons statutes does not justify SVP's discharge when he "continues to be a sexually violent person, [because] the cost to the public of releasing him into society would simply be too high and would be contrary to [the statutes'] treatment objective"); *see also State v. Bomar*, 199 Ariz. 472, 478-79, ¶ 23 (App. 2001) (holding, in case of commitment of guilty-except-insane person under A.R.S. § 13-3994, that "[n]o provision of the federal or state

constitution requires release of a person who continues to suffer from a mental disease or defect and poses a danger").

II.  FREDERICK IS NOT ENTITLED TO DISCHARGE BASED ON HIS WILLFUL REFUSAL TO PARTICIPATE IN ANNUAL EXAMINATIONS.

¶24        Frederick next contends that he was denied due process, and therefore must be discharged, because his refusal to participate in the 2016 and 2017 annual examinations rendered the examinations insufficient.  He contends that the state had a duty to conduct examinations that included his participation, and that the state, therefore, should not have allowed him to refuse to participate.  This argument merits little discussion.

¶25        The Act requires "annual examination" of each SVP by a psychiatrist, psychologist, or other competent professional.  A.R.S. § 36-3708(A).  The Act does not establish substantive criteria for the examination.  *See* A.R.S. §§ 36-3701, -3708.  The examination must, however, permit the professional to form reliable opinions.  *See Walter v. Wilkinson*, 198 Ariz. 431, 433, ¶ 13 (App. 2000).  Obviously, the SVP's participation in the examination will enhance the reliability of the professional's opinions and may aid the state in meeting its burden to justify continued commitment, *see* A.R.S. §§ 36-3709, -3714.  The state should make diligent efforts to secure the SVP's participation in examinations.  But it would be absurd to hold that the SVP may manufacture a due process violation by willfully refusing to participate, particularly when the examiner has access to substantial reliable collateral data in the form of the commitment records.  *See In re MH2009-002120*, 225 Ariz. 284, 289, ¶¶ 15-16 (App. 2010) (holding, in context of court-ordered mental-health treatment under A.R.S. § 36-533, that appellant's willful refusal to participate in statutorily required evaluation did not render evaluation insufficient).  And we decline to hold that the state must seek a court order whenever faced with such defiance.[2]

---

[2]        We note that, as a practical matter, a court order carries minimal coercive weight when directed to one who already is committed.  *See Korman v. Strick*, 133 Ariz. 471, 474 (1982) (identifying detention and fines as mechanisms of civil contempt); *cf. Holt v. Hotham*, 197 Ariz. 614, 615–16, ¶¶ 3, 10-11 (upholding contempt order against *potential* SVP who refused to submit to the initial examination and holding that "should a person be allowed to refuse such an examination, the SVP Act would be eviscerated").

**¶26** The record demonstrates that Frederick was allowed to participate in the examinations and deliberately declined to do so. Nothing in the record indicates that his refusal to participate deprived the examiners of the opportunity to render reliable opinions.

III. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO IMPOSE DISCLOSURE SANCTIONS.

**¶27** Frederick finally contends that the superior court should have precluded the state from presenting evidence based on untimely disclosure.

**¶28** The Arizona Rules of Civil Procedure govern disclosure under the Act. *See* A.R.S. § 36-3704(B); *State v. Gottsfield*, 213 Ariz. 583, 585, ¶ 7 (App. 2006). Imposition of sanctions for disclosure violations under the rules is within the superior court's discretion. *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 10 (2003). The disclosure rules are intended to provide parties a reasonable opportunity to prepare for trial, not to create a mechanism by which technical procedural failings may result in danger to the public and the cessation of rehabilitative treatment. *See id.* at ¶ 13. The rules must be applied in a commonsense, case-by-case manner to maximize the likelihood of a decision on the merits. *Id.* at ¶ 14.

**¶29** Untimely disclosure under Rule 26.1 may warrant preclusion, but not if the court finds that the delay caused no prejudice. Ariz. R. Civ. P. 37(c)(1). Here, even if the state's failure to serve a formal disclosure statement until March 2017 constituted a violation of its obligations under Rule 26.1, we discern no abuse of discretion in the superior court's conclusion that Frederick suffered no prejudice. Frederick admitted that he had copies of the relevant reports, and we conclude that the state's request for telephonic appearance adequately notified him of the identity of the state's proposed witness. Further, though Frederick complains that the state's disclosure statement failed to identify the witness's contact information, as specified in Rule 26.1(a)(3), he did not object to the absence of that information in the superior-court proceedings and the record demonstrates that the information was readily available to him via other sources.

9

**CONCLUSION**

¶30   We affirm the denial of Frederick's petition for discharge.



AMY M. WOOD • Clerk of the Court
FILED: AA